### ED. M. LUTTRELL v. R. H. HARDIN.

(Filed 23 February, 1927.)

**1. Principal and Surety—Negligence—Insurance — Indemnity — Loss— Contracts—Actions.**

> The surety on an indemnity bond against loss resulting to another from the negligence of the owner in driving his automobile, is not liable unless a loss has been sustained before action brought, when this liability is excluded by the terms of the bond.

LUTTRELL *v.* HARDIN.

**2. Same—Evidence.**

 Where a surety is on a bond of the owner of an automobile indemnifying him against loss for his negligence, evidence of the suretyship is inadmissible in an action brought against the owner, when under the terms of the bond the surety cannot be held liable in the action until the owner has sustained a loss.

**3. Appeal and Error—Evidence—Motions to Strike Out Evidence—Exceptions.**

 Where a question asked a witness on the trial of an action is competent, exception to his answer when incompetent in part, should be taken by motion to strike out the part that is objectionable, and an appeal then taken to the refusal of the judge to do so.

**4. Negligence—Automobiles—Statutes—Speed Limits—Accident—Proximate Cause—Concurring Cause—Evidence—Questions for Jury.**

 While exceeding the speed limit in driving an automobile upon the highway is negligence *per se,* it must be the proximate concurring cause of an injury alleged to have been negligently inflicted to render the owner liable in damages to a guest in his car, and under conflicting evidence as to whether the injury solely resulted from an unforeseeable or unavoidable accident, the question is one for the jury under proper instructions from the court.

APPEAL by plaintiff from *Lane, J.,* and a jury, at July Term, 1926, of AVERY. No error.

Material allegations of plaintiff: On the night of 27 November, 1924, he became a passenger in an automobile owned and driven by defendant, with the intention to drive from his home at Shull's Mill, N. C., to Banners Elk, N. C., and from there to Linville, N. C., in order that defendant, who is a licensed and practicing physician, might render professional services to plaintiff's brother. Between nine and ten o'clock in the evening of said 27 November, 1924, at a point in the county of Avery, near Banners Elk, the automobile in which plaintiff was riding with defendant and another was overturned at a curve in the highway and plaintiff was thrown therefrom and suffered serious bodily injuries. That plaintiff's injuries were caused wholly and proximately by the negligence of defendant, in that: (a) Defendant negligently and recklessly operated his car in violation of the laws of North Carolina; (b) defendant in approaching said curve was driving at a speed greater than was reasonable and proper and in excess of the speed of ten miles per hour; (c) defendant failed to keep a proper lookout for his safety and the safety of his guests; (d) defendant failed to keep his motor car under control at all times, as required by law. Plaintiff therefore prays judgment, etc.

Defendant in his answer denied the material allegations of negligence, and says: That at the time of the accident the defendant was driving

a comparatively new Buick car with the plaintiff and one Mrs. Bradley in the car with him, and that he was running at a very moderate speed when for some cause unknown to the defendant the lights in the car suddenly went out; that it was dark and foggy, and when the lights went out the defendant was unable to see the road, and before the car could be stopped it slipped off the lower bank of the road; that after the lights went out the car did not move more than six or eight feet until it went over the embankment; that the defendant had been driving the car and keeping it in good condition, and the lights had always been good and had never given any trouble before prior to this night and the defendant believes that the switch controlling the lights was accidentally touched by either the plaintiff or Mrs. Bradley and suddenly turned off, and said injury was caused by no fault of defendant, but was an unavoidable accident; that the plaintiff himself informed this defendant that his injury was in no way due to any negligent act on the part of the defendant, and has repeatedly told a number of people other than the defendant that it was a pure accident and unavoidable, and that he attached no blame whatever to the defendant; that the plaintiff was voluntarily riding with the defendant, merely as an accommodation to him, and has not paid and was not expected to pay anything for the services; that the defendant was not a carrier of passengers for hire and had no right to transport passengers for hire.

The issues submitted to the jury, and their answers thereto, were as follows:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: No.

"2. What damages, if any, is the plaintiff entitled to recover? No answer."

The other material facts necessary for the decision of the case will be set forth in the opinion.

Plaintiff assigned numerous errors and appealed to the Supreme Court.

*Squires & Whisnant and Johnson J. Hayes for plaintiff.*

*Frank A. Linney, W. C. Newland, S. J. Ervin and S. J. Ervin, Jr., for defendant.*

CLARKSON, J. The first group of assignments of error on the part of plaintiff is to the exclusion of certain evidence by the court below, which the plaintiff contends, if not a direct admission, was by inference an admission of liability.

From careful analysis of these assignments of error, we think the court below was correct in holding the evidence incompetent. The evi-

dence appears to be an indirect method to get before the jury that defendant had indemnity insurance. As an example, from the group (fourth assignment) : "Q. I will ask you if you told Mr. George Robbins that if the suit had been brought for only $25,000 you would have had no complaint? A. I told him that this damage suit was brought against me for more insurance than I had; that if they should get judgment against me for more insurance than I am covered by, that I would not have the money to pay it. I told him I didn't object to Ed. getting some money if it didn't bother me, but as to the amount, I don't know. He was talking to me about it, and I was sorry of it, but I couldn't help it, but I don't mean to admit that I was liable by saying that, for I was not."

It is well settled in this jurisdiction : "That the assured . . . must actually sustain a loss before an action will lie upon the indemnity policy, as this is expressly required by the terms." *Killian v. Hanna, ante,* p. 20. It has been repeatedly held that the fact that a defendant in an actionable negligence action carried indemnity insurance could not be shown on the trial. Such evidence is incompetent. *Lytton v. Mfg. Co.,* 157 N. C., 331; *Featherstone v. Cotton Mills,* 159 N. C., 429; *Hensley v. Furniture Co.,* 164 N. C., 148; *Starr v. Oil Co.,* 165 N. C., 587; *Holt v. Mfg. Co.,* 177 N. C., 170; *Stanley v. Lumber Co.,* 184 N. C., 302; *Bryant v. Furniture Co.,* 186 N. C., 441; *Allen v. Garibaldi,* 187 N. C., 798; *Fulcher v. Lumber Co.,* 191 N. C., 408.

The following question was asked defendant : "What rate of speed were you traveling?" To which he answered : "I couldn't say. I was driving moderately. I was not going over fifteen miles an hour. I don't know that I was going that much. I just don't know exactly, but I was not going over 15 miles. I was going at what I thought was a safe speed relative to the road."

Conceding, but not deciding that defendant's answer, "What I thought was a safe speed relative to the road," was incompetent. The question propounded witness was competent, and defendant should have asked that the incompetent part of the answer be stricken out. This he did not do.

In *Gilland v. Stone Co.,* 189 N. C., at p. 786, it is said : "If defendant deemed the statement of the witness, which was not in response to the question directed to him by counsel, but voluntarily made, incompetent and prejudicial, it should have directed its objection to the court, accompanied by a motion to strike the objectionable statement from the record, and by a request for an instruction, if desired, to the jury that the statement had been stricken from the record and should not be considered as evidence. To a ruling upon this motion an exception

would lie as a basis for an assignment of error upon appeal to this Court. *Huffman v. Lumber Co.,* 169 N. C., 259; *Wooten v. Order of Odd Fellows,* 176 N. C., 52; *S. v. Green,* 187 N. C., 466." *Hodges v. Wilson,* 165 N. C., 323; *Young v. Stewart,* 191 N. C., p. 302.

We come now to the main controversy below. Plaintiff claiming actionable negligence—defendant claiming sudden emergency or accident. E. M. Luttrell, Dr. R. H. Hardin and Mrs. Bettie Bradley, the latter who was working at Grace Hospital at Banners Elk, were in a Buick roadster, six cylinder car, driven by Dr. Hardin, going from Shull's Mills, via Valle Crucis, to Banners Elk. Plaintiff was going to see a sick brother who Dr. Hardin was to give medical attention next morning. The car went off the road about 9 :00 o'clock p.m., 27 November, 1924. Plaintiff testified, in part: "Before we arrived on this turn where the wreck happened, I noticed Doctor was running too close to the left hand side of the road, and I told him he had better haul his car in, and he made no reply, and when we got up two or two and a half car lengths of where we went over the bank, I said, 'My God, Doctor, hold your car; we will go off the road,' and he made an attempt to hold the car in the road, and he made an attempt to back his car. There was a sharp elbow curve in the road at that point. It was between twenty and thirty feet from the break of the ditch bank to the break of the road. We were traveling at about eighteen miles an hour. The car went over the bank and I got smashed up. . . . The accident took place between Ed. Shoemaker's home and Banners Elk. There was a winding curve and a very high bank and looked like a straight road from that curve to the next place. We had not entered the curve when I again called Dr. Hardin's attention that his car was too close to the edge of the road, about 200 feet or more and within two and one-half car lengths when I again called his attention to haul his car in. He was acquainted with the road and went over it at all times of the night. He was driving a Buick roadster. The curve was from 20 to 30 feet wide. There was a bank on the right and the road was so constructed it was on a level to where the car swerved I would say sixteen feet. The car left the road about the center of the curve. Dr. Hardin had time enough to stop his car the first time and sufficient time to stop it the second. At the rate of speed he was running he would not have run over four feet until he could have stopped his car dead still. I have never driven a Buick, but I know the distance it would take to stop a Buick of that type, and at fifteen miles an hour he could have brought his car to a dead stop in four feet." Luttrell testified further that the lights were on and had been all the way up. Dr. Hardin had had no trouble with the lights before that.

The following witnesses testified for defendant:

Mrs. Bettie Bradley: "We saw the lights of the hospital, and we went around this turn, and lights went off and we were off of the bank. The lights went out and we went off. Dr. Hardin tried to stop the car."

Dr. R. H. Hardin: "Luttrell got in my car in front of his home (Shull's Mills), and my car was at that time, as far as I know, in good shape. I had had it inspected by the garage man, and so far as I knew it was all right. We started off to Banners Elk. . . . We were going up the Bowers Mountain, and we noticed the lights flickered down right around the curve, and I jarred the switch on and off, and worked with it, and they came back strong, and we went on, and all at once the lights dimmed off again, and I put my foot on the brakes and tried to stop and could not, and went off of the curve. I was about the center of the road when the lights went off. There is a sharp curve. I was just approaching this curve when the lights went off. . . . When the lights went off Mr. Luttrell said, 'Can't you put it in,' and he said, 'Dock, we are gone.' He said that just as we went off. I had not heard him make any statement before we started off, because there was not time. He told me to pull it over, as it went off the bank, after we struck the soft dirt. I tried all the time to stop the car. When we started off I put my foot on the brake, possibly too hard—I don't know—just as hard as I could."

Henry Voncannon testified that plaintiff did not state how it occurred, but stated that he didn't put any blame on Dr. Hardin; that the accident was unavoidable, nobody was to blame. . . . He said he was not driving recklessly.

V. C. Allison: "I went to visit plaintiff at the hospital, about three or four days after the accident, and he told me that they were riding along slow and the lights went out, and they went off the road."

Mrs. Shoemaker: That she lived close by, and that Dr. Hardin came to her home about 9 o'clock to get a lantern; "When I got to the car the lights were off."

Mrs. Mont Johnson: "I had a conversation with the plaintiff, Ed. Luttrell, after the injury; me and him were talking about it; he said he could not blame Dr. Hardin because it was an accidental wreck."

W. G. Drawn: "I heard him say that it was an accident that Dr. Hardin could not help. Heard him say it three or four times."

Press Jennings was at the place soon after car went off road and testified: "Heard Luttrell make a statement when he and Mrs. Bradley were in the truck; I was between the two, and Mrs. Bradley said, 'Press if we die, we don't want anybody to think hard of Dr. Hardin or to think he was at fault, for it was an unavoidable accident,' and Mr. Luttrell said,

'That is right; I don't want Dr. Hardin blamed, because the lights went off, and it could not be prevented.' "

Dr. Tate: "Plaintiff made a statement to me; said he did not feel that Dr. Hardin was to blame, and that it was an unavoidable accident."

Jim Shoemaker: "I asked him how that wreck happened, and he told me that the lights went off on the turn of the curve and that caused the wreck."

Bynum Banner: "They were driving slow; the lights went, and all he knew was that they went off the bank."

Charlie Coffey: "Best I remember, I asked him how the accident occurred, and he said that they were just coming along and that the lights went off, and the next thing he knew they were off the road. That is about all he said. He did not say anything about Dr. Hardin, only he said it was an unavoidable accident."

The court below charged fully the law of the road; called attention to the different statutes applicable to the facts of the case; that failure on the part of the defendant to do what the law required was negligence *per se,* and under the disputed facts left it for the jury to say what the facts were and, if defendant was negligent, whether or not such negligence was the proximate cause or one of the proximate causes of the plaintiff's injury. *Albritton v. Hill,* 190 N. C., p. 429; *Fleming v. Holleman,* 190 N. C., 449.

In 1 Thompson's Commentaries on the Law of Negligence, sec. 68, it is said: "Where an injury is the combined result of the negligence of the defendant, and an accident for which neither the plaintiff nor the defendant is responsible, the defendant must pay damages, unless the injury would have happened if he had not been negligent." *Lawrence v. Power Co.,* 190 N. C., p. 664.

The defendant's defense, in substance, was: That the cause of the wreck was not an excessive rate of speed; that if defendant was driving at more than ten miles an hour (the law of the road at that time), that was not the proximate cause of the injury to plaintiff, although it was a violation of the statute. That the sole proximate cause of the injury was the going out of the lights suddenly and accidentally, and that that was due to no lack of care on the part of defendant; that he had his car inspected a short time before that, and that his lights were burning properly, and that his lights suddenly went out and caused him to drive to a portion of that road that looked straight, when in fact it was a curve; that the sudden going out of his lights was the sole and only proximate cause of the injury, due to no fault of his, and not due to any way in which he was driving the car, and that that is the dominant, efficient cause, the cause without which the injury would not have

LUTTRELL *v.* HARDIN.

occurred, was the going out of the lights; that if the lights had stayed on, that he had the car under proper control, and that the injury would not have occurred.

In *Lee v. Donnelly,* 95 Vt., 121, it is said: "If he (the driver of an automobile confronted with a sudden emergency) acted in the light of all the surrounding circumstances as a careful and prudent man would reasonably act under like circumstances, he did all the law required of him. Whether he did this was a question for the jury." *Gravel v. Roberge,* 134 Atl. Reporter (Me.), at p. 375; *Massie v. Barker,* 224 Mass., 423.

3 Babbitt on the Law Applied to Motor Vehicles, p. 832, sec. 1311, says: "The court may instruct the jury that if they find that the injuries resulted from an unavoidable accident unmixed with negligence, the verdict should be for the defendant, *as where the motor dies suddenly without warning, leaving a car in a dangerous situation,* and a charge is correct which states that defendant is not liable in case of an accident, and that an accident is such an unexpected catastrophe as occurs without any one being to blame for it."

An accident is defined in *Thomas v. Lawrence,* 189 N. C., at p. 524, as: "An unforeseen event occurring without the will or design of the person whose mere act causes it; an unexpected, unusual or undesigned occurrence; the effect of an unknown cause, or the cause being known, an unprecedented consequence of it; a casualty. Black's Law Dictionary. *Crutchfield v. R. R.,* 76 N. C., 320. 'An employer is not responsible for an accident simply because it happened, but only when he has contributed to it by some act or omission of duty.' *Martin v. Mfg. Co.,* 128 N. C., 264; *Simpson v. R. R.,* 154 N. C., 51; *Lloyd v. R. R.,* 168 N. C., 646; *Bradley v. Coal Co.,* 169 N. C., 255."

Plaintiff contends, however, that defendant got in this unfortunate position of danger by violating the speed limit and concedes that the car would have remained in the road if the lights had not gone out, still it would have stopped before reaching the bank if it had been moving at the lawful speed. Therefore the violation of the speed regulations by the defendant was the proximate cause of the injury, and it would not have happened if the law had been obeyed. The prayers for instruction by plaintiff were not given in the language asked for, but in substance by the court below, and the charge as a whole covered every aspect relied on by both plaintiff and defendant. The law was clearly set forth by the court below and the facts left to the jury on every attitude and phase of the case. The jury found for the defendant. On the whole record we can find no reversible or prejudicial error.

No error.