INA E. JERNIGAN v. ALBERT M. JERNIGAN.

(Filed 27 February, 1935.)

**1. Appeal and Error L d—**

Where the Supreme Court has ruled on a former appeal that the evidence was sufficient to overrule defendant's motion as of nonsuit, C. S., 567, and the evidence upon the second trial is substantially the same, the question of the sufficiency of the evidence is *res judicata* and will not be considered on the second appeal.

**2. Appeal and Error J e—**

The admission of evidence over defendant's objection cannot be held harmful where evidence of the same import as that objected to is admitted without objection.

3. **Automobiles C j—**

What a joint enterprise is within the meaning of the doctrine of imputed negligence must be determined to a great extent from the facts of the particular case.

4. **Same—Preemptory instruction in plaintiff's favor on issue of imputed negligence held not error under evidence in this case.**

The uncontradicted evidence disclosed that defendant and his wife were taking a long trip in defendant's car to visit their daughter, that defendant's wife, in order to give defendant a rest, at his request, was driving the car at the time of the accident in suit, that defendant was sleeping or dozing and suddenly awoke as the car passed a truck on a fill just before a railroad overpass, and that defendant, thinking the car in imminent danger of being wrecked, grabbed the wheel and swerved the car to the right, resulting in the car being driven over the embankment: *Held,* in the wife's action against her husband to recover for her resulting injuries, a charge that if the jury should find the facts to be as testified and shown by all the evidence they should answer the issue of imputed negligence in the wife's favor is not error.

5. **Negligence A b—Instruction on doctrine of imminent peril held without error in this case.**

The court's charge to the jury on the doctrine of sudden peril to the effect that a person confronted with a sudden and unexpected emergency is not required to exercise the same presence of mind and judgment as in ordinary circumstances, and that defendant would not be liable if the jury should find that he acted as an ordinary prudent man would have acted under the circumstances, *is held* without error, and defendant's objection on the ground that the court should have charged that defendant would not be liable if he acted as an ordinary prudent man might have acted under the circumstances, instead of as an ordinary prudent man would have acted, cannot be sustained, "would" and "might" having no substantial difference under the facts and circumstances of the case, and the charge containing no prejudicial error when construed as a whole.

6. **Appeal and Error E b—**

Where the charge of the court on an aspect of the case is not in the record it will be presumed that the court correctly charged the law applicable to the evidence.

APPEAL by defendant from *Devin, J.,* and a jury, at November Term, 1934, of EDGECOMBE. No error.

This is an action for actionable negligence, brought by plaintiff against defendant. The defendant in his answer denied negligence, and set up the defense of sudden emergency, joint enterprise, and contributory negligence. The evidence on the part of plaintiff was to the effect that she was the wife of defendant and was injured in an accident on 16 April, 1932, while traveling in defendant's car from Norfolk to California. Defendant drove the car from Norfolk to Weldon and asked the plaintiff to take the wheel, and they headed towards Rocky Mount.

The plaintiff testified, in part: "The road between Enfield and Whitakers passed over the railroad, the road being elevated by an overhead bridge where it crosses over the track. We reached the overhead bridge about 4 o'clock in the afternoon. The weather was fair. The road was dry and in good condition. The road was paved with cement to the bridge and with tarvia over the overpass. I was driving about 30 miles per hour. I had driven a car for several years and had never had an accident. Just before we got to the bridge there was a truck in front of me and I blew for the truck and passed around it. I was leaving the cement part of the road and entering upon the part paved with tarvia when I blew my horn. I passed the truck and, after passing it, I was getting back on the right side of the road and my husband grabbed the steering wheel and I don't remember anything else. At and about the time I was passing the truck I did not see any other vehicles coming in the opposite direction. I was about one-fourth up the incline when I passed the truck, and it was after that my husband grabbed the wheel. When he grabbed the wheel the car went to the right and over the embankment and I do not remember anything further. Before he grabbed the wheel the car had not slipped over the pavement. We were not meeting anybody, I was not nervous or frightened, and did not think I was in any danger. The embankment is about eight feet above the surrounding country about one-fourth of the way up where we passed the truck and about twelve feet above the surrounding country about one-half way up the incline where the car went over. . . . Just before my husband grabbed the wheel I was in the center of the road and had passed the truck. I had started back to the right-hand side and had gotten in about the middle of the highway. I do not remember anything further until I awoke in the hospital the next morning. . . . My husband was, at the time of the accident, a police officer of the city of Norfolk, and had been for about fifteen years. I have no other income except his salary and no property except property that he gave me or property that we accumulated together. . . . We had saved enough with what my daughter had given me to take a trip to California. . . . On our trip to California we had planned that I would drive awhile and he would drive awhile. He had worked all night the night before the accident. When we got to Weldon he said he was tired and sleepy and wanted to take a nap, and I took the wheel so he could sleep and drove from Weldon to the overhead bridge where the accident occurred. . . . As I was going around the truck my car was headed to the left. I don't know when my husband, who was sitting beside me in the front seat, awoke, but if he awoke at that moment I guess he looked right out into space with the ground 12 feet or more below him. It was not at that point that he took hold of the wheel.

27—207

JERNIGAN v. JERNIGAN.

He took hold of the steering wheel as I went to get back on the right side of the road after going around the truck. . . . My husband took hold of the steering wheel and tried to pull the car back into the road. I was not in any danger. The car was not facing to the left when he took hold of the wheel. It was facing straight up the road and I was getting it back on the right side of the road. I had gotten around the truck, then he took hold of the steering wheel. . . . I do not know when my husband woke up. He was asleep some time before we got to the bridge and the first thing I knew ·he had grabbed the wheel. He had not spoken to me. I don't know what he thought or what he saw or when he woke up. The first thing I knew he just grabbed the wheel. . . . Before passing the truck I looked to see whether there were any cars between me and the bridge, and did not see any cars coming."

Wyatt Fountain, who was driving the truck about 20 miles an hour, which plaintiff passed, testified, in part: "I should say Mrs. Jernigan passed me about a fourth of the way up the incline and the car made the leap from a point about halfway up the incline. There was no other traffic on the road. It is about 500 feet from the beginning of the incline to the bridge. At that time there was no railing on the road. The highway, including the shoulders, was about 30 feet wide. An automobile is about 5 feet wide, and will take up about 8 feet. When the car cut I stopped my truck and watched to see what was going to take place. I was thunderstruck at it making those turns and the car sailed off and landed on all four wheels and went across the field and dropped in a ditch on the side of the railroad. It looked like it was going over, but it did not have momentum enough, and dropped against the bank, its rear end standing up and its front end in a ditch. . . . I did not see anything unusual about the car passing me on the road just before the accident. After she passed I did not see that it got off the pavement. It went to the left and then back. I did not see anything unusual before it began switching back and forth across the road. There was plenty of room to pass, and she passed me all right."

In many respects the defendant's testimony tended to corroborate that of the plaintiff. He heard the horn blow, and saw the road, the truck, and the bridge, and he did not think it was a dangerous road, and his wife was in control of the car, driving at a moderate rate of speed. "My wife and I have talked about the accident very little in the last two years. While we were talking about it, she said that if I had not grabbed the wheel she would have righted the car up and the accident would not have happened, or substantially that. . . . I do not say now she failed to operate the automobile in a careful and lawful manner, or that she failed to have it under proper control."

The issues submitted to the jury and their answers thereto are as follows: "(1) Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? A. 'Yes.' (2) Were the plaintiff and defendant engaged in a joint enterprise, so as to bar the plaintiff's action, as alleged in the answer? A. 'No.' (3) Did the plaintiff, by her own negligence, contribute to her injury, as alleged in the answer? A. 'No.' (4) What damages, if any, is the plaintiff entitled to recover? A. '$7,500.' "

The defendant made numerous exceptions and assignments of error. The material ones will be considered in the opinion.

*Battle & Winslow for plaintiff.*
*Willcox, Cooke & Willcox and Thorp & Thorp for defendant.*

CLARKSON, J. This action has heretofore been before this Court and a *Per Curiam* opinion was filed 19 September, 1934, *post,* 851. This Court reversed the judgment of nonsuit, and said: "While the defenses of joint enterprise, sudden emergency, unconsciousness of the defendant, and contributory negligence raise very interesting questions, we think they should have been submitted to the jury under proper instructions, since we are of the opinion that there was sufficient evidence of the alleged negligence of the defendant to carry the case to the jury."

At the close of plaintiff's evidence, and at the close of all the evidence, the defendant made motions in the court below for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions, and in this we can see no error. This Court passed on the evidence in this case when it was here before. There is no material difference in the evidence on the former and this appeal. On this aspect, the matter is *res judicata.* The defendant presents other questions for our consideration. First: "Did the court err in permitting the defendant to testify that the taking hold of the wheel by him was the sole cause of the accident?" We think not, on this record.

On cross-examination the defendant testified: "Some while after the accident my wife told me that my grabbing the wheel put the car out of control. To think about it now, I don't see why she could not have straightened it up, and I say she could have avoided the accident if I had left the wheel alone. If I had left the wheel alone, there was nothing to have caused the accident. Q. So, as you see it now, your grabbing the wheel was the sole cause of the accident? A. Well, I pulled it off to the right, yes, sir." The defendant objected to the above question and moved that the answer be stricken out; the motion was denied, and defendant excepted.

We see nothing harmful in the question and answer from defendant's testimony that was given. Without prior objection, defendant had sub-

stantially made the same statement: "I say she could have avoided the accident if I had left the wheel alone. If I had left the wheel alone there was nothing to have caused the accident."

In *Colvard v. Light Co.,* 204 N. C., 97 (101), citing authorities, it is said: "It is well settled that the testimony is harmless where similar testimony is admitted without objection."

Second: "Did the court err in refusing to permit the jury to pass upon the question as to whether or not the plaintiff and the defendant were engaged in a joint enterprise?" We think not. On this aspect, the second issue, the court below charged the jury as follows: "The court charges you if you should come to the consideration of the second issue, that if you find the facts to be as testified and as shown by all the evidence, that you would answer the second issue 'No.'"

What is a joint enterprise has to be determined to a great extent from the facts in the particular case. In Babbitt Motor Vehicle Law, 4th Ed., sec. 1719, pp. 1229-30: "To constitute a 'joint enterprise' between the passenger in an automobile and the driver, the passenger must have some control or right of control over the vehicle; otherwise, he may not be held a joint adventurer, or engaged in a common enterprise, and ordinarily the relation between the automobile driver and one invited to ride with him is that of a guest and host, and not that of joint enterprise, or joint venture, where the occupant has no responsibility for or share in the control of the car. This rule is applied to an occupant riding with the driver to see a fire, to one riding from a dance to get refreshments, to one riding with her daughter to visit her son, to a minor accompanying the driver on a picnic."

In *Pusey v. R. R.,* 181 N. C., 137 (141-2), is the following: "The courts recognize the doctrine included in the second prayer for instruction, but as it is said in *Withey v. Fowler Co.,* 164 Iowa, 377: 'It is somewhat difficult to state a comprehensive definition of what constitutes a joint enterprise as applied to this class of cases, but it is perhaps sufficiently accurate for present purposes to say that to impute a driver's negligence to another occupant of his carriage, the relation between them must be shown to be something more than that of host or guest, and the mere fact that both have engaged in the drive because of the mutual pleasure to be derived does not materially alter the situation.' The rule seems to be: 'That the occupant of the automobile must be in a position to assume the control or control in some manner the means of locomotion. *Lawrence v. Sioux City* (Ia.), 154 N. W., 494, and it has been held that the fact the driver and the occupant were mutually engaged in a pleasure ride did not create a joint enterprise. *Withey v. Fowler Co.,* 164 Ia., 377; *Beard v. Klusmeier,* 158 Ky., 153; Ann. Cas., 1915 D, 342.'"

In *Charnock v. Reusing Light & Refrigerating Co.*, 202 N. C., 105 (106), it is said: "Nor is there sufficient evidence that the plaintiff and the defendants were engaged in a joint enterprise. A common enterprise in riding is not enough; the circumstances must be such as to show that the plaintiff and the driver had such control over the car as to be substantially in the joint possession of it. *Albritton v. Hill*, 190 N. C., 429."

In Anderson's An Automobile Accident Suit, part sec. 582, pp. 718-719, speaking to the subject, is the following: "In order to constitute a joint venture, a joint enterprise, or common purpose there must be an agreement to enter into an undertaking in respect of which the parties have a community of interest and a common purpose in its performance. Generally, the test of whether or not a joint venture, joint enterprise, or common purpose exists between the parties in connection with the operation of a motor vehicle is whether or not there is a joint control. There is no legal distinction between the phrases 'joint enterprise' and 'prosecution of a common purpose.' The effect of the formation of a joint enterprise is to make all members responsible for the negligence of any member who injures a third person and to make the negligence of any member available as a defense by a third person to a recovery by another member. In order to fix responsibility on a passenger as a joint adventurer, not only must there exist between the passenger and the participant alleged to be responsible for the accident a common purpose to be served in the use of the car, but there must also be evidence that would warrant a finding that the passenger had the same right as the other to a voice in the management or direction of the vehicle."

In the present case the defendant owned the car and was taking the plaintiff, his wife, to visit their daughter in California. The defendant was the bread-winner and head of the household, a policeman in Norfolk, Va., and had worked all night before the accident. He had driven the car to Weldon, N. C., and was tired and sleepy—wanted to take a nap—and at his request plaintiff took the wheel. We think, from all the evidence under the facts and circumstances of this case, that there is no error in the charge.

Third: "Is the test to be applied in determining the negligence of a defendant when confronted by a sudden and unexpected emergency what a reasonably prudent man would have done under the same or similar circumstances, or what a reasonably prudent man might have done under the same or similar circumstances?" We think, under the facts and circumstances of this case, the use of the words "would" and "might" is practically a distinction without a difference, and not prejudicial.

The court below charged the jury, in part, as follows: "That the defendant was in the car with her and apparently asleep or dozing, and you find that passing the said truck and turning back to the right side

of the road when about the center of the road the defendant Albert M. Jernigan suddenly grasped the steering wheel and turned it to the right and caused the automobile to run off of the embankment and injured the plaintiff, and (you find that the defendant in so turning the steering wheel and causing the car to run off of the embankment failed to act as a reasonably prudent person would have acted or acted as a reasonably prudent person under the same or similar circumstances would not have acted, and further find that such negligent act on the part of the defendant was the proximate cause of plaintiff's injury, you would answer this first issue 'Yes'; otherwise, you would answer it 'No')." Exception and assignment of error.

"That the defendant did grasp the wheel and turn it to the right, that he was acting under a sudden emergency and apparent peril, and that his conduct is to be judged in the light of the circumstances as they then appeared. (The law is that where a person is confronted by an emergency or a sudden peril, although he may not take the safest course or act with the best judgment, he should not be held liable if he acted in the light of all the surrounding circumstances as a careful and prudent man would reasonably act under like circumstances and confronted by like or similar emergency.)" Exception and assignment of error.

"If a person be placed in such a position that he is compelled to choose instantly in the face of grave or apparent imminent peril means of averting the peril, the law does not require the exercise of all the presence of mind and careful judgment that would be required where there is opportunity to weigh and determine the wisest course to pursue. (So, if you find from this evidence that the defendant was suddenly confronted by apparent peril, and that the defendant acted under the reasonable apprehension that the car would run off of the embankment if he did not instantly turn off to the right, and you find that he acted as a reasonably prudent person would have acted under the same or similar conditions in an effort to avert the apparent danger or peril, he could not be held responsible, and you would answer this first issue 'No.')" Exception and assignment of error.

"Defendant calls attention to his own testimony and the surrounding circumstances, and contends that even though he says now, after thinking about it, she would have gotten along all right if he had not interfered when the car began to swerve, woke him up and it looked as if the car was going off the embankment and he acted in sudden emergency, apparent peril and his instinct was to turn the wheel, and turned it too far, or caused it to go off the embankment. He contends she was going too fast; that she herself had created an emergency, and that her act had brought about the confrontation of a sudden peril, and that he acted in the light as it then appeared to him and with such judgment as he

could instantly give to it; that instinctively he tried to turn the wheel to avert danger, that though it must have resulted that he caused it to go off, yet (he was acting as he contends you should find, as a reasonably prudent person under like or similar circumstances would have acted, and that you should answer the issue 'No')." Exception and assignment of error.

To the above, in parentheses, the defendant made exceptions and assignments of error. Taking the charge as a whole, we think the exceptions and assignments of error cannot be sustained.

In 20 R. C. L. (Negligence), part sec. 111, p. 135, is the following: "Of course, the presence of sudden peril will not excuse all errors of judgment and all omissions to act; such diligence must be exercised as the circumstances permit, the standard of care being that of a person of ordinary prudence when confronted with the same situation. There is no rule of law which prescribes any particular act to be done or omitted by a person who finds himself in a place of danger. In the variety of circumstances which constantly arise it is impossible to announce such a rule. The only requirement of the law is that the conduct of the person involved shall be consistent with what a man of ordinary prudence would do under like circumstances. And whether the plaintiff exercised such care is for the jury's determination."

"Whether the degree of care actually exercised (in a sudden emergency), or the course actually adopted, was that imposed by law, is to be determined under all the circumstances of the case by the standard of what a prudent person would have been likely to do *under the same circumstances*." Vartanian on the Law of Automobiles (N. C. Text), sec. 6, p. 10.

"If he (the driver of an automobile confronted with a sudden emergency) acted, in the light of all the surrounding circumstances, as a careful and prudent man *would* reasonably act under like circumstances, he did all the law required of him." *Luttrell v. Hardin*, 193 N. C., 266 (273), quoting with approval from *Lee v. Donnelly*, 96 Vt., 121.

We see no error in submitting to the jury the second issue in the form submitted, and refusing to submit the issue in the form tendered by defendant. On the issues of contributory negligence and damage, the charge of the court below is not in the record. The presumption of law is that the court below charged the law applicable to the facts on these issues.

On the entire record we see no prejudicial or reversible error.

No error.