F. B. INGLE v. LUCRETIA CASSADY.

(Filed 9 October, 1935.)

**1. States A a—**

An action may be instituted in the courts of this State on a transitory cause of action arising in another state unless forbidden by public policy or the laws of this State, but the right to recover will be determined by the laws of the state in which the cause of action arose.

**2. Automobiles C f—Evidence held insufficient to show negligence of driver of car in acts done when confronted with sudden emergency.**

Plaintiff brought this action in the courts of this State to recover for injuries sustained in an accident occurring in another state while plaintiff was riding as a passenger in a car driven by defendant. The evidence tended to show that while defendant was driving in a careful and prudent manner the car suddenly started to wobble on the highway because of a rear tire becoming flat, and that defendant in attempting to recover control of the car first speeded up the car and then stepped on the brake, resulting in the car turning over, causing the injuries in suit. *Held:* The act of defendant in applying the brake in the sudden emergency is insufficient to show negligence under the rule that a person confronted with a sudden emergency is not held to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence, similarly situated, would have made, and defendant's motion for judgment as of nonsuit should have been allowed, the *lex loci* being controlling.

**3. Negligence A b—**

A person confronted with a sudden emergency is not held by the law to the same degree of care as in ordinary circumstances, but only to that degree of care which a person of ordinary care and prudence, similarly situated, would have exercised.

SCHENCK, J., took no part in the consideration or decision of this case.

CLARKSON, J., dissenting.

APPEAL by plaintiff from *Warlick, J.,* at March Term, 1935, of BUNCOMBE.

Civil action to recover damages for an alleged negligent injury.

The facts are these: On 16 September, 1933, the plaintiff and two others left Asheville with the defendant, in the defendant's Plymouth car, to attend the World's Fair in Chicago, and possibly to return via Canada and Niagara Falls. The understanding was, that the defendant would furnish the car, while the other three were to bear the expenses of transportation, oil, gas, etc., which they did. The plaintiff was also to do part of the driving. The plaintiff and the defendant rode on the front seat, and took time about at driving, while the others occupied the rear seat. On the return trip, near Lodi, Ohio, while Miss Cassady was driving, "she was driving carefully and prudently about the time the

trouble started," the car began to swerve backwards and forward from one side of the road to the other ("shimmying"). It increased its speed from a safe and normal rate (35 to 40 miles an hour) to 55 or 60 miles an hour, and "as it went down the long slope of concrete road, perhaps twenty feet wide, it got faster and faster until finally something caused it to reverse itself in the road, and as it did, it went over a bank seven to ten feet high into a ditch partially filled with water. . . . There was no traffic on the road at the time. . . . Miss Cassady was trying to hold the car in the road, but she certainly was not able to do it, or did not do it."

The plaintiff testified: "At the time the trouble started, Miss Cassady was driving about 38 miles per hour—she had just taken the wheel from me about 12 miles this side of Cleveland. I was sitting on her right-hand side. She had her foot on the accelerator and she speeded the car up to 50 or 60 miles an hour. When the car began to swerve, I knew there was something wrong. . . . She was gripping the wheel and struggling. . . . She took her foot off the accelerator and applied the hydraulic brakes with force, and that turned the car around and turned it over. She applied the brakes just as quickly as she could take her foot off the accelerator and change it over to the brake, and then the car turned completely over on its back with the wheels up. . . . She was doing the wrong thing, but I did not open my mouth because I did not have time, and that is the truth. . . . The next day the garage man said they found a nail in one of the rear tires; it was flat. . . . All the occupants of the car were injured. Miss Cassady was very badly cut. I went to the hospital several times to see her. She had to stay in the hospital ten days or two weeks, and I came away and left her there."

From a judgment of nonsuit entered at the close of plaintiff's evidence, he appeals, assigning error.

*Ford, Coxe & Carter for plaintiff.*
*Harkins, Van Winkle & Walton for defendant.*

STACY, C. J. The plaintiff sues to recover for injuries sustained in an automobile accident occurring in the State of Ohio. Liability is to be determined by the law of that State, for unless the plaintiff is entitled to recover there, he is not entitled to recover here. If, however, under the *lex loci*, a transitory cause of action accrues, it may be prosecuted in another jurisdiction, unless forbidden by public policy or the *lex fori*. This is conceded. *Wise v. Hollowell*, 205 N. C., 286, 171 S. E., 82; *Steele v. Telegraph Co.*, 206 N. C., 220, 173 S. E., 583.

The defendant was not an insurer of plaintiff's safety while on the trip in question, and we agree with the trial court that the evidence

offered fails to show such conduct on her part as imports liability under the law applicable. *S. v. Cope,* 204 N. C., 28, 167 S. E., 456. The plaintiff was injured in an unfortunate accident, it is true, but an accident it was, pure and simple. *Thomas v. Lawrence,* 189 N. C., 521, 127 S. E., 585; *Patterson v. Ritchie,* 202 N. C., 725, 164 S. E., 117. He himself testified: "I do not know what I would have done had I been at the wheel." He later said he would have applied the brakes rather than put his foot on the accelerator, but he was then speaking in the light of subsequent events. "Hindsight is usually better than foresight."

While the defendant may not have pursued the safest course or acted with the best judgment or the wisest prudence, in the light of what occurred, still it is not thought that this should be imputed to her for negligence, because with a flat tire and "shimmying" car she was faced with an emergency which required instant action without opportunity for reflection or deliberation. *Smith v. R. R.,* 200 N. C., 177, 156 S. E., 508. She was "trying to hold the car in the road, gripping the wheel and struggling," when it suddenly went over the embankment and into the ditch. Some allowance must be made for the excitement of the moment and the strain of nerves. One who is required to act in an emergency is not held by the law to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence, similarly situated, would have made. *Poplin v. Adickes,* 203 N. C., 726, 166 S. E., 908; *Pridgen v. Produce Co.,* 199 N. C., 560, 155 S. E., 247; *Odom v. R. R.,* 193 N. C., 442, 137 S. E., 313; *Parker v. R. R.,* 181 N. C., 95, 106 S. E., 755; *Norris v. R. R.,* 152 N. C., 505, 67 S. E., 1017. In *Hinton v. R. R.,* 172 N. C., 587, 90 S. E., 756, it is said: "It is well understood that a person in the presence of an emergency is not usually held to the same deliberation or circumspect care as in ordinary conditions." In other words, the standard of conduct required in an emergency, as elsewhere, is that of the prudent man. *Jernigan v. Jernigan,* 207 N. C., 831, 178 S. E., 587; *Small v. Utilities Co.,* 200 N. C., 719, 158 S. E., 385. "If the peril seemed imminent, more hasty and violent action was to be expected than would be natural at quieter moments, and such conduct is to be judged with reference to the stress of appearances at the time, and not by the cool estimate of the actual danger formed by outsiders after the event"—*Holmes, J.,* in *Gannon v. R. R.,* 173 Mass., 40.

Had the emergency been brought about by defendant's own carelessness, as was the case in *Luttrell v. Hardin,* 193 N. C., 266, 136 S. E., 726, a different situation might have arisen. Annotation, 79 A. L. R., 1277. But plaintiff's testimony is to the effect that the defendant "was driving carefully and prudently about the time the trouble started."

The judgment of nonsuit is correct.

Affirmed.

SCHENCK, J., took no part in the consideration or decision of this case.

CLARKSON, J., dissenting: The testimony of the plaintiff and his witnesses indicated an emergency or sudden peril immediately before the wrecking of the automobile which the defendant was driving at the time, and the court below held as a matter of law that this was a sufficient defense. Otherwise, the case would have gone to the jury, for there was testimony by the plaintiff, corroborated by other witnesses for the plaintiff, that the defendant negligently put her foot on the accelerator instead of the brakes when the automobile began to "shimmy" or swerve from one side of the road to the other. Certainly, when considered in the light most favorable to the plaintiff, this was more than a scintilla of evidence. *Tinsley v. Winston-Salem,* 192 N. C., 597.

It was held in *Jernigan v. Jernigan,* 207 N. C., 831 (see, also, *Jernigan v. Jernigan,* 207 N. C., 851), that the defense of sudden emergency is one for the jury. This is the universal holding among American courts. As was said in *Combs v. Markley* (Me.), 143 Atl., 261 (263): "The law as to drivers of motor vehicles is not different from that which governs other persons. Whether the conduct measured up to the standard of common caution for the driver of a motor vehicle under like conditions and circumstances was a question of fact. *Massie v. Barker,* 224 Mass., 420, 113 N. E., 199. Where an automobilist, to avoid striking a pedestrian, swerved to one side and struck a wagon, it was for the jury to determine whether his act was the result of an emergency, and whether, if there was an emergency, defendant acted with becoming prudence, not necessarily with the same degree of deliberation and heed as in an affair of human life elsewhere but there. *Kosrofian v. Donnelly* (R. I.), 117 A., 421. The driver is exonerated if the course which he takes in an emergency is one which an intelligent and prudent man would take. Whether he did this was a question for the jury. *Gravel v. Roberge,* 125 Me., 399, 134 A., 375. See, too, *Brown v. Rhoades,* 126 Me., 186, 137 A., 58, 53 A. L. R., 834; *Lammers v. Carstensen,* 109 Neb., 475, 191 N. W., 670; *Richards v. Rifenbery,* 108 Okl., 56, 233 P., 692; *Lee v. Donnelly,* 95 Vt., 121, 113 A., 542; *Donker v. Powers,* 230 Mich., 237, 202 N. W., 989; *Henderson v. Dimond,* 43 R. I., 60, 110 A., 388. When the facts are such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. *Larrabee v. Sewall, supra; Parker v. Smith,* 100 Vt., 130, 135 A., 495. That is this case."

The *Jernigan case, supra,* is abundantly supported by decisions in other jurisdictions. *Combs v. Markley, supra,* and cases there cited; *Hansen v. Bedell Co.* (Or.), 268 P., 1020; *Oginskas v. Fredsal* (Conn.),

143 Atl., 888; *Casey v. Sicilliano* (Pa.), 165 Atl., 1; *Watkins v. Watkins* (Wis.), 245 N. W., 695; *Hatcher v. Cantrell* (Tenn.), 65 S. W. (2d), 247.

It is well established that if different men can draw different conclusions from the evidence, it is a question for the jury. *Fowler v. Underwood,* 193 N. C., 402. The jury is charged with the duty of passing upon the credibility of witnesses, so long as they do not testify to the impossible. *Hanes v. Southern Public Utilities Co.,* 188 N. C., 465. In cases where there is any substantial evidence in the record to support allegations, the question of negligence is properly submitted to the jury. *Jernigan v. Jernigan, supra; Fields v. Brown,* 205 N. C., 543.

In this case there was testimony by the plaintiff and other witnesses that an emergency or sudden peril arose, that the defendant was negligent in failing to slow down and in speeding up after the emergency arose.

It is a matter of grave concern to those who travel on the highways of the State to take away from the jury the rule of the prudent man, even in an emergency. This Court would soon become an autocracy of five, and trial by jury a misnomer. The American authorities are, I might say, almost unanimous against the position taken in the main opinion.