14880

LONG v. CAROLINA BAKING CO., INC., *ET AL.*

(3 S. E. (2d), 46)

368

*Messrs. Hicks & Johnston,* for appellants,

*Messrs. Price & Poag* and *W. A. Bull,* for respondent, cite:

May 23, 1939.

The opinion of the Court was delivered by MR. L. D. LIDE, ACTING ASSOCIATE JUSTICE.

This is an appeal from a judgment upon a verdict in favor of the plaintiff against the defendants for personal injuries alleged to have been sustained by the plaintiff as the result of a collision between an automobile in which the plaintiff was riding, the same being driven by her husband, Tom Long, and a motor truck alleged to have been owned by the corporate defendant and which was being driven by the defendant Haskell Killgore. The case came on for trial before Hon. G. Dewey Oxner, presiding Judge, and a jury, in the Court of Common Pleas for Greenville County, the trial having been begun on June 30, 1938.

The motion of the defendants for a nonsuit was overruled, as was the motion of the defendant Carolina Baking Company for a directed verdict. The presiding Judge, however, charged the jury that it was conceded by counsel in the cause that the law with reference to joint enterprise or imputed negligence is controlled by the law of the State of North Carolina wherein the collision occurred, and that hence the negligence, if any, on the part of the driver of the car in which the plaintiff was riding would not be imputed to or chargeable to her. The charge of the Court on this point is the basis of one of the two exceptions on this appeal, it being alleged that under the evidence the question of imputed negligence was one of fact for the jury. There were no other exceptions to the charge, nor was there any exception relating to the admission or exclusion of evidence.

The question thus presented for our decision is, Was there any evidence from which the jury could reasonably conclude that the negligence, if any, on the part of the driver of the car in which the plaintiff was riding should be imputed to her?

Since the collision occurred in North Carolina the law of that state is admittedly controlling. The plaintiff submitted to the trial Court and introduced in the record the North Carolina cases of *York v. York,* 1938, 212 N. C., 695, 194 S. E., 486; *Jernigan v. Jernigan,* 1935, 207 N. C., 831, 178 S. E., 587, and *Butner v. Whitlow,* 1931, 201 N. C., 749, 161 S. E., 389; and although it was agreed that either party might hand up other North Carolina cases, if they wished to do so, there were no other cases submitted, and hence it is conceded that the North Carolina law is to be found in the three decisions submitted. We have, therefore, very carefully considered all of these cases, and in our opinion they establish the following principles:

In order to constitute what is termed in the law a joint enterprise between a passenger in an automobile and the driver, the passenger must have some control or right of control over the vehicle. "A common enterprise in riding is not enough; the circumstances must be such as to show that the passenger and the driver had such control over the car as to be substantially in the joint possession of it."

Perhaps some of the confusion arising on this subject is due to the use of the phrase *joint enterprise,* which standing alone might indicate that merely because the passenger and the driver were taking the trip with the same end in view, a joint enterprise, in the meaning of the law of negligence, would thus result. "The test of a joint enterprise, however, between the driver of an automobile and another occupant is whether they were jointly operating and controlling the movements of the vehicle. In other words, the passenger as well as the driver must be entitled to a voice in the control

and direction of the car. Each must have the control of the means or agencies employed to prosecute the common purpose."

The North Carolina Court in the case of *Jernigan v. Jernigan, supra,* quotes with approval the following (207 N. C., 831, 178 S. E., 590) : " ' * * * In order to fix responsibility on a passenger as a joint adventurer, not only must there exist between the passenger and the participant alleged to be responsible for the accident, a common purpose to be served in the use of the car, but there must also be evidence that would warrant a finding that the passenger had the same right as the other to a voice in the management or direction of the vehicle.' "

It is, indeed, apparent from the foregoing statement ██ of the law, as we deduce it from these North Carolina decisions, that the Supreme Court of that state is committed to substantially the same general rule which obtains in our own State, and in other jurisdictions. We think it will be found clearly expressed in our case of *Funderburk v. Powell,* 181 S. C., 412, 187 S. E., 742, 750, where the Court, speaking through Mr. Justice Fishburne, says:

"The general rule was early established that if two or more persons unite in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect to the control of the means and the agencies employed to execute such common purpose, the negligence of one in the management thereof will be imputed to the others. *Nesbit v. Town of Garner,* 75 Iowa, 314, 39 N. W., 516, 1 L. R. A., 152, 9 Am. St. Rep., 486. But it does not follow that, because several persons are occupants of the same vehicle, they are necessarily engaged in a joint venture within the rule.

"The first element that must be found to be present before two parties can be said to be engaged in a joint enterprise is, as the very name of the relationship necessitates, that they must have some common purpose of pleasure or profit, and

must be acting toward the accomplishment of this purpose at the time when the relationship is sought to be established.

"The cases on the question of joint enterprise are numerous. They are almost wholly concerned with whether, admitting that the driver of an automobile and a person riding with him have a common purpose in making the trip, *further conditions exist* from which it can be said to appear that the negligence of the driver should be imputed to the passenger. The legal theory upon which such imputation is allowed is that if two parties are engaged in a joint enterprise each is the agent of the other, and each the principal of the other, so as to bring into force the fixed prececpts of the law of agency." (Italics added.)

The evidence in the case at bar relating to this question is wholly undisputed. The plaintiff's mother and sister resided at Oteen, N. C. On January 3, 1937, Tom Long took his brother Nelson Long and his wife, Mrs. Nell Long, the plaintiff herein, from their home near Anderson, S. C., to Oteen on a visit to Mrs. Long's mother and sister. They also took along with them a colored servant girl. The collision in question occurred on January 4, 1937, upon their return trip.

Mrs. Long testified that they went to Oteen to take the servant girl to her mother and sister and to visit these relatives. These relatives of Mrs. Long wanted to get a servant, and Mrs. Long was naturally interested in helping them in this respect. They had written Mrs. Long and the prospective servant. It further appears that the servant came to see Mrs. Long at her home to get Mr. Long to carry her to Oteen, and that she talked the matter over with Mr. and Mrs. Long, and it was thereupon agreed that they would take her up to Oteen the next day, which was Sunday. And pursuant to this arrangement the trip was made. The car belonged to Mr. Long and was driven by him throughout the entire trip, and Mrs. Long had nothing whatever to do with the driving. She did, however, testify that Mr. Long

kept this car for his family and that she drove it at times; and any time she wanted it her husband had no objection to her use thereof.

It is quite clear that the only reasonable inference that can be drawn from the evidence is that Mr. Long was taking the trip for the purpose of carrying the servant girl to his wife's relatives, out of his consideration for them, and that his wife accompanied him in order that she might have the opportunity of visiting her mother and sister; but that she did not accompany him for the purpose of assisting in any way in the transportation of the servant, nor did she have any control whatever of the car. It seems to us that any other conclusion would amount to a *reductio ad absurdum.*

Counsel for the appellants frankly and correctly state in their brief that under the North Carolina law the mere fact that the parties are husband and wife, "or that they are in a joint venture, is not the determining factor; but there must be joint control of the car, in order to impute the negligence of the one to the other." But considering all the evidence in the case on this point, and construing it most favorably to the defendants, we think it is manifest that the trial Judge correctly charged the jury that if there was any negligence on the part of the driver of the car in which the plaintiff was riding it could not be imputed to or chargeable to her under the North Carolina law.

It will be of interest to note that in the case of *Jernigan v. Jernigan, supra,* which was an action by a wife against her husband, they were riding together with the common purpose of visiting their daughter, and that they had actually planned that one would drive the automobile a while and the other would drive a while. Yet the Supreme Court held that the trial Judge was correct in his refusal to submit to the jury the question of whether the husband and the wife were engaged in a joint enterprise, in view of the facts disclosed by the evidence that the husband, who was the head of the family, owned the car and was taking his wife to visit their

daughter in California, and the wife had taken the wheel at his request at the time the accident occurred.

The only remaining exception imputes error to the trial Judge in overruling the motions for a nonsuit and a directed verdict in behalf of Carolina Baking Company, upon the ground that there was no such corporation, the same having been dissolved long before the "accident complained of", and that hence no action could be maintained against it.

It is alleged in the complaint that Carolina Baking Company "is a corporation under the laws of one of the states of the United States", engaged in the business of selling bread, and having a place of business in Greenville, S. C. The answer sets up as a *first defense* that the defendants specifically deny that the alleged defendant Carolina Baking Company is a corporation, and allege that on June 24, 1935, the Carolina Baking Company transferred all of its assets to the Columbia Baking Company, and the Carolina Baking Company as a corporation was dissolved; and that at the time of the "accident complained of", and at all times thereafter, the Carolina Baking Company was not in existence as a corporation and had no assets, offices, agents or employees. The answer also contains a *second defense* on the merits, denying all alleged acts of negligence and willfulness, and setting up joint enterprise and contributory negligence.

It appears from the undisputed evidence, most of which was adduced in behalf of the defendants, that Carolina Baking Company was incorporated under the laws of the State of North Carolina on October 1, 1914, and that on October 24, 1924, it filed an application for permission to do business in South Carolina, which was granted. The company established a plant at Greenville, S. C., under its corporate name, which has ever since been operated in that name.

On June 24, 1935, pursuant to resolutions of its board of directors and stockholders, Carolina Baking Company transferred all of its assets to Columbia Baking Company, a newly chartered Delaware corporation, having its general

offices at Atlanta, Ga., and Carolina Baking Company was thereupon dissolved, although no notice of such dissolution was filed in South Carolina, so far as the evidence shows. But it is admitted that since that date Columbia Baking Company has continued to operate the Greenville plant under the trade name of Carolina Baking Company, and it has so operated throughout South Carolina. It further appears that Columbia Baking Company operates fifteen plants in several states and uses a number of different trade names, Carolina Baking Company being used as such trade name not only in South Carolina but in North Carolina.

It is further admitted that the motor vehicle license for the truck involved in the collision in question was issued by the South Carolina State Highway Department to Carolina Baking Company, and that the name Carolina Baking Company was painted on the truck. The evidence shows that the plant in Greenville has a sign on it reading "Carolina Baking Company". Furthermore, the applications for a license to do business in the City of Greenville were all made in the name of Carolina Baking Company.

The first defense alleged in the answer might be construed as analogous to a plea in abatement under the common law practice, wherein the defendant was required to give the plaintiff a better writ; and if the plaintiff in this case had accepted the proffer and amended by bringing her suit against Columbia Baking Company, perhaps that much of the controversy might have been eliminated. However, we do not think her failure so to do has any material consequence so far as the ultimate result is concerned, for the evidence truly admits of no other reasonable inference but that the corporate entity which appeared and defended this action on the merits acquired the assets formerly owned by the corporation whose corporate name was Carolina Baking Company, and continued to do business in that name as a trade name; and hence the verdict and judgment against Carolina Baking Company is binding upon the ex-

istent corporate entity and its assets, by whatsoever name it may be known or called. The corporate fiction and the rules surrounding it have been of inestimable service in the affairs of business, but they must be applied in such a manner as to promote justice, not to hinder or defeat it.

In the case of *Tunstall v. Lerner Shops,* 160 S. C., 557, 159 S. E., 386, 389, an action was brought and a judgment obtained against the defendant in the name of "The Lerner Shops, Inc." It later appeared that the correct name of the defendant was "Lerner Stores Corporation", and the Court held that the judgment should be amended, and that the misnomer of a corporation has the same effect as the misnomer of an individual, which is properly a subject of amendment. The Court also quotes with approval the following statement from 14 C. J., 325: " 'If a corporation has acquired a name by usage *an adjudication against it by the name so acquired is valid and binding.'* " (Italics added.) See, also, *Alexander v. Berney,* 28 N. J. Eq., 90; *Wilkins v. McCorkle,* 112 Tenn., 688, 80 S. W., 834, and *Ferry v. Cincinnati Underwriters,* 111 Mich., 261, 69 N. W., 483, to the same effect.

The rule is stated in 13 Am. Jur., 270, as follows:

"A corporation, as well as individuals, may have or be known by several names in the transaction of its general business so that it may enforce, as well as be bound by, contracts entered into in an adopted name other than the regular name under which it was incorporated.

"It seems to be universally recognized that a corporation may do business under an assumed name or under a name differing from its true corporate name. It seems also to be recognized, however, that suit brought by or against a corporation should be in the true name of the corporation."

The last sentence in the foregoing quotation does indeed indicate that ordinarily a suit should be brought in the correct corporate name; but under the principles laid down in the case of *Tunstall v. Lerner Shops, supra,* and the other

authorities cited, this would not invalidate the judgment, where, as here, the corporate defendant has suffered no prejudice, to say nothing of the matter of waiver hereinafter briefly discussed.

Carolina Baking Company applied for and obtained from the State Highway Department in that name a license for the operation of the motor truck in question which was involved in the collision. It would be most anomalous to say that Carolina Baking Company had sufficient existence to receive a license to operate the truck, but not enough to assume responsibility for the *proper* operation thereof as required by law. Under these circumstances the corporate entity admittedly owning and operating the truck cannot seek thus to be relieved of responsibility, or justly complain because plaintiff used the name it deliberately adopted for its own trade purposes.

There are other considerations supporting our conclusion, and brief allusion will be made to one of them, to wit, that the corporate entity defending this action waived the right to deny the corporate existence of Columbia Baking Company, because there was a general appearance and a plea on the merits.

In the case of *Sentell v. Southern Railway*, 67 S. C., 229, 45 S. E., 155, 156, the defendant pleaded a misnomer in abatement of the action and also pleaded to the merits of the cause, and the Court said: "With respect to the question of jurisdiction, Southern Railway Company was served with summons in this case, appeared generally, and, in addition to the plea as to misnomer, answered to the merits. This was sufficient to confer jurisdiction over Southern Railway Company."

Both of the exceptions are overruled and the judgment of the Circuit Court is affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham, Baker and Fishburne concur.

MR. JUSTICE CARTER did not participate on account of illness.