16900

BOLT v. GIBSON ET AL.

(83 S. E. (2d) 191)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-ville, *for Appellant,*

*Messrs. Thomas A. Wofford* and *Hubert E. Nolin,* of Greenville, *for Respondent,*

August 5, 1954.

J. FRANK EATMON, Acting Associate Justice.

Respondent instituted this action through her Guardian *ad Litem* to recover damages for alleged injuries that she received when the automobile in which she was riding at the time was struck from the rear by the appellant automobile which was being driven on such occasion by the appellant Gibson. Appellants filed an answer to respondent's complaint and alleged therein, among others, the defenses of contributory negligence and joint enterprise and imputed negligence. Thereafter the case was tried before the Hon. J. Robert Martin, Jr., Resident Judge of the Twelfth Circuit, with a jury. Upon completion of the testimony in the trial, Counsel for the respondent moved the Court to strike the allegations of the defenses mentioned on the theory that there was no testimony to support the same. Such motion was refused and the jury was instructed the law pertaining to said defenses. A verdict was rendered in favor of appellants whereupon counsel for respondent promptly made a motion for a new trial because of the alleged error of the Trial Judge in refusing to strike from the Answer, and

charging the jury on the principles of law involved in the aforementioned defenses. In a very well considered Order, Judge Martin conceded that he had erred during the trial in the respects contended by respondent and directed a new trial in the case. Therefrom appellants timely perfected an Appeal to this Court.

Appellants in their Brief state only two questions as involved. First, "Should the trial court have submitted the defense of contributory negligence to the jury?"

Before considering the stated question it appears desirable to correct an erroneous impression of appellants' counsel as indicated from the following quotation in their Brief: "The trial judge held as matter of law there could be no contributory negligence on the part of the plaintiff in this case." The whole tenor of Judge Martin's Order clearly refutes such assertion and on the contrary affirmatively shows that he considered the testimony in the record as ample to make an issue for the jury as to whether or not respondent was capable of negligence. The following quotation therefrom accurately demonstrates his holding on the point:

"A child from the age of six to fourteen years is presumed to be incapable of committing an act of negligence. However, this is a rebuttable presumption, and if there is any testimony from which a jury could reasonably conclude or infer that a child of this age was capable of committing an act of negligence, then that fact should be submitted to the jury for determination. *In this case there was sufficient evidence to go to the jury on the question of whether or not the plaintiff, a schoolgirl of thirteen years, was capable of committing acts of negligence.*" (Italics added.)

We turn our attention again to the question stated above and quote further from Judge Martin's Order an appropriate and important statement, to wit: "* * *, the attorneys for the defendants (appellants) frankly admitted that there was no evidence in the record to show that the plaintiff (respondent) had committed any act of

negligence by way of commission." We need, therefore, to consider only whether the testimony will support the reasonable inference that respondent was guilty of contributory negligence on this occasion by any act of omission on her part. There can be no doubt but what one may be equally as guilty of contributory negligence by acts of omission as by acts of commission. And usually such is a mixed question of law and fact and is ordinarily for determination by the jury. But it is also true that when the evidence admits of but one reasonable inference, whether from all of the testimony considered together or from the lack of any evidence thereon, it becomes a matter of law ·for the determination of the Court. *Gillespie v. Ford*, 222 S. C. 46, 71 S. E. (2d) 596.

For understandable answer to the question here we must necessarily give rather detailed consideration to the testimony adduced in the trial. As analyzed from the record, the same establishes these salient and uncontradicted facts. Between 8:00 and 8:15 o'clock on the morning of December 4, 1950, Respondent, a minor of 13 years, along with her father and elder sister, was riding in an automobile en route from her home to school in the City of Greenville. Respondent's father, a prominent lawyer of that City, was operating the vehicle while her sister and respondent sat beside him on the front seat, the latter having been seating nearest the right front door. As they traveled along McDaniel Avenue in said City and approached the intersection of Ridgeland Drive therewith, they were compelled to stop near such intersection because of a red traffic signal light ahead. The vehicle was brought to a complete stop. Traffic was heavy and there was considerable rain falling at the time. There were several other automobiles in the same lane of traffic between the car wherein respondent was riding and the intersection, being variously estimated by different witnesses from 6 to 15. On the same occasion appellant Gibson was also traveling on McDaniel Avenue in his Plymouth automobile and following next to the Bolt car. While the

vehicle in which respondent was riding had stopped near said intersection Gibson drove his automobile into the rear of the Bolt car with such force and violence that respondent sustained serious and severe injuries to her neck and shoulders from the impact.

Respondent's father also testified that after stopping at the intersection he ran his hand around the window (of his car) "to see where the rain was coming in." There is no further explanatory testimony on this point, so that it is impossible to say whether the window involved was in the front or rear of the automobile.

Although respondent's witnesses testified that the Bolt car stopped on only one occasion near the traffic signal mentioned, there was testimony by appellant Gibson that it made two stops and that the collision occurred on the second stop which was affected suddenly and without any warning. For the purpose of decision here it will be assumed that the Bolt car did make a second stop and that the collision occurred at that time because the appellant is entitled to have the testimony considered in the light most favorable to him.

It is argued by appellants' Counsel that there were three persons riding on the front seat of the automobile in which respondent was traveling; that the weather was bad and it was raining very hard causing poor visibility; that traffic was exceedingly heavy and that the driver of the Bolt car was attempting to determine how the water was seeping into the vehicle when the collision occurred. From these alleged facts they reason that the jury could have concluded that while so engaged respondent's father put his car in motion in the heavy traffic and heavy rain without paying attention to what was happening in front of him; that, because of his attention to the water coming in and inattention to the traffic, when the traffic stopped in front of him, he applied his brakes quicker than was necessary or usual and consequently stopped with extreme suddenness so that Gibson was unable to avoid the collision. While frankly ad-

mitting that the record shows that respondent did nothing on this occasion, they contend that such circumstances made an issue for the jury to determine as to whether or not respondent used due care in failing to remonstrate with her father in not keeping a lookout under the extremely, hazardous conditions existing at the time.

With the reasoning of appellants' Counsel we are unable to agree. It must be kept in mind that because of respondent's age, she being only 13 years, she is presumed to be incapable of negligence. And in no event does the law impose the same degree of care and caution upon a minor as a person of mature age. *Hollman v. Atlantic Coast Line R. Co.,* 201 S. C. 308, 22 S. E. (2d) 892.

In the absence of any fact or circumstance indicating that the driver is incompetent or careless, an occupant of a motor vehicle is not required to anticipate negligence on the part of the driver. Thus, in the absence of any facts or circumstances indicating the contrary, he need not anticipate that the driver, who has exclusive control and management of the vehicle, will enter a sphere of danger, will omit to exercise proper care to observe the approach of other vehicles, or fail to signal the approach of the vehicle which he is driving, or fail to keep the speed of the vehicle within proper limits, or otherwise improperly increase the common risks of travel. *Funderburk v. Powell,* 181 S. C. 412, 187 S. E. 742, 749.

Thus in determining the issue here the testimony must be viewed in the light of the stated principles. There is nothing in the Record before us from which it might be reasonably inferred that the driver of the Bolt vehicle was not operating the same in a proper manner as he traveled from his home to the scene of the collision. That the traffic on this occasion was any heavier than on previous occasions when respondent had been driven to school by her father. Nothing from which it can be reasonably inferred that respondent had not safely traveled this

same route with him on previous other occasions when it was raining or otherwise more hazardous than on this. Nothing from which it might be reasonably inferred that respondent saw or should have seen her father's attempt to ascertain how the water was seeping into the car. The only testimony on this point indicates that he *merely passed his hand around the window of the vehicle* and that this was a momentary act which respondent would not be expected to see unless she was looking directly at him at the time, and nothing to indicate that she was so looking. Nothing from which it might reasonably be inferred that respondent saw or should have seen the vehicle driven by Gibson approaching from the rear at all let alone in time to do anything that might have prevented the collision. Assuming that the Bolt car made a second stop near the intersection at which time the collision occurred, there was nothing out of the ordinary in the first stop to put respondent on notice that her father might suddenly stop on another occasion before reaching the intersection. There is no contradiction of the testimony that the first stop near the intersection was normal in every respect. It is of particular significance that there is nothing found in the evidence from which it might be reasonably inferred that respondent had ever driven an automobile or knew anything whatsoever concerning the operation of one. In the absence of any testimony thereabout the only reasonable inference therefrom was that she had never driven and was unfamiliar with the mechanics of operating a motor vehicle. Section 46-181, S. C. Code of 1952, makes it unlawful for a minor under 14 years of age to drive and operate a motor vehicle upon the public highways of this State. Thus, it must be assumed that she had never driven an automobile because every person is presumed to have obeyed the law, not to have violated it.

On the other hand the evidence clearly established that respondent was the youngest occupant of the vehicle wherein she was riding. Both her father, the driver, and her sister were her elders. Respondent was sitting in a position which

she had occupied on numerous other occasions and which to her was a place of safety. Seated as she was she was properly looking forward and not to the rear. Had she looked to the rear, and there was no occasion for her so doing, she could have done nothing to warn her father in time to prevent the collision in which she suffered the injuries. The collision occurred "all of a sudden," according to the testimony of the appellant Gibson, and respondent was afforded no opportunity for doing anything to prevent the same.

Thus, we are compelled to conclude that there was no affirmative showing in the record from which it might have been reasonably inferred that respondent was negligent in failing to remonstrate with her father or to protest his manner of operating the vehicle in which she was riding on the unfortunate occasion. And the situation of appellants is not improved when we view the matter from a negative approach. Any absence of testimony which might have had the effect of either negating contributory negligence on the part of respondent or of making an issue for the jury thereon can not be considered here as benefiting the position of appellants. She was charged with no duty of adducing evidence that would negative any alleged contributory negligence on her part, such as lack of knowledge concerning the mechanics of operating an automobile, or that she did not see her father attempt to discover where the water was seeping into the car because she was looking ahead at all times and so forth. We have already adverted to the fact that she was presumed to be incapable of negligence, and that presumption prevailed unless overcome *by sufficient proof to the contrary. Farmer, Inc. v. Cimino,* 185 Va. 965, 41 S. E. (2d) 1. Contributory negligence in any proper case is an affirmative defense and the burden of proving facts sufficient to make an issue for the jury thereon is always upon the party pleading the same. *Padgett v. Southern Ry. Co.,* 216 S. C. 487, 58 S. E. (2d) 895. It was the affirmative duty of appellants to offer testimony sufficient to make an issue on this defense before they were entitled to

have the same submitted to the jury and, having failed to carry the burden that rested upon them, they cannot now be heard to complain.

Under the foregoing circumstances we are convinced that the testimony in the record made no issue for submission to the jury on the alleged defense of contributory negligence, and the learned Circuit Judge properly so held in his Order granting a new trial.

Appellants' second question is thusly stated: "Should the trial court have submitted the defense of imputed negligence or joint enterprise to the jury?"

It appears that such question must also be answered in the negative. We are unable to more forcefully or clearly express the applicable rule here than it is found in the words of that eminent, but lately retired, Associate Justice of this Court, The Honorable E. L. Fishburne, in the case of *Funderburk v. Powell, supra,* 187 S. E. at page 750, where in he said:

"The general rule was early established that if two or more persons unite in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect to the control of the means and the agencies employed to execute such common purpose, the negligence of one in the management thereof will be imputed to the others. *Nesbit v. Town of Garner,* 75 Iowa 314, 39 N. W. 516, 1 L. R. A. 152, 9 Am. St. Rep. 486. But it does not follow that, because several persons are occupants of the same vehicle, they are necessarily engaged in a joint venture within the rule.

"The first element that must be found to be present before two parties can be said to be engaged in a joint enterprise is, as the very name of the relationship necessitates, that they must have some common purpose of pleasure or profit, and must be acting toward the accomplishment of this purpose at the time when the relationship is sought to be established.

"The cases on the question of joint enterprise are numerous. They are almost wholly concerned with whether, admitting that the driver of an automobile and a person riding with him have a common purpose in making the trip, *further conditions exist* from which it can be said to appear that the negligence of the driver should be imputed to the passenger. *The legal theory upon which such imputation is allowed is that if two parties are engaged in a joint enterprise each is the agent of the other, and each the principal of the other, so as to bring into force the fixed precepts of the law of agency.*" (Emphasis added.)

The rule above stated was re-affirmed in the more recent case of *Padgett v. Southern Ry. Co.*, 219 S. C. 353, 65 S. E. (2d) 297, 298, and the Court therein stated:

" '* * * In order to constitute a joint enterprise so that the negligence of the driver of an automobile may be imputed to an occupant of the car, it is generally held that there must be a common purpose and a community of interest in the object of the enterprise and an equal right to direct and control the conduct of each other with respect thereto. In other words, the passenger, as well as the driver, must be entitled to a voice in the control and direction of the vehicle. There must be a community in the object and purpose of the undertaking and an equal right to direct and govern the movements and conduct of each other in respect thereof. Each must have the control of the means or agencies employed to prosecute the common purpose.' "

In applying the rule adduced from the foregoing quotations we need to enquire and determine whether the testimony is sufficient from which it may be reasonably inferred that respondent, as well as her father, the driver, was entitled to a voice in the control and direction of the vehicle; whether she had an equal right to direct and govern his movements and conduct in respect to the trip and the operation of the vehicle; and thus whether the driver was the agent of respondent on the occasion.

In their printed · brief appellants argue on this point that the driver was the agent, servant, or representative of respondent. Such conclusion is based on a statement appearing in the Order of Judge Martin, *i. e.,* "The evidence upon this question shows only that the Plaintiff was a 13-year old girl being carried to school by her father as was his custom and *duty."* (Emphasis theirs). Therefrom they reason that if, in carrying the respondent to school, the driver of the car was performing a *duty* owed to the respondent he was of necessity acting for and in behalf of her, either as agent, servant, or representative and that his negligence is therefore imputable to her. That it at least raised a question for the jury to decide.

It will be conceded that appellants argument is ingenious, but it is as equally unsound. Clearly the use of the word "duty" by the learned Circuit Judge was not intended to create the implications ascribed to· it by appellants so as to bring this case within the contemplation of the rule of "joint enterprise" stated from the above quotations in the cases of *Funderburk v. Powell* and *Padgett v. Southern Ry. Co., supra.* Obviously he intended to imply nothing more than that what the driver of the car was doing on this occasion was morally and legally required of him. It was both his moral and legal duty to see that respondent attended school on the morning of the collision. It was his moral duty to take her there on this rainy day if she had no other means of transportation, and it must be assumed that she had none.

The testimony, which need not be repeated in detail, might possibly support the inference that there was a community of object and purpose on the part of the respondent and the driver of the vehicle, but it certainly falls far short of sustaining the reasonable inference that she had an equal right with the driver to direct and govern the movements of the automobile, or any control over it. It was merely the ordinary domestic and social relationship, when a father, who owns an automobile takes the members of his family to school. This alone carried no inference that his passenger

had any right to direct and govern the movements of the vehicle. It would be utterly absurd and ridiculous to hold that it could be reasonably inferred from the testimony here that the respondent, a 13-year old school girl, had any voice in the control and direction of the automobile in which she was riding or that she had an equal right to direct and govern the movements and conduct of her father in the operation of the vehicle on this occasion, so as to make him the *agent* of her on such occasion.

Application of the rule of joint enterprise was refused in the case of *Long v. Carolina Baking Co.,* 190 S. C. 367, 3 S. E. (2d) 46, wherein much stronger reasons than here appeared to favor application thereof. The material facts and conclusion thereon appear from the following quotation, 3 S. E. (2d) at page 48 thereof, to wit:

"Mrs. Long testified that they went to Oteen to take the servant girl to her mother and sister and to visit these relatives. These relatives of Mrs. Long wanted to get a servant; and Mrs. Long was naturally interested in helping them in this respect. They had written Mrs. Long and the prospective servant. It further appears that the servant came to see Mrs. Long at her home to get Mr. Long to carry her to Oteen, and that she talked the matter over with Mr. and Mrs. Long, and it was thereupon agreed that they would take her up to Oteen the next day, which was Sunday. And pursuant to this arrangement the trip was made. The car belonged to Mr. Long and was driven by him throughout the entire trip, and Mrs. Long had nothing whatever to do with the driving. She did however, testify that Mr. Long kept this car for his family and that she drove it at times; and any time she wanted it her husband had no objection to her use thereof.

"It is quite clear that the only reasonable inference that can be drawn from the evidence is that Mr. Long was taking the trip for the purpose of carrying the servant girl to his wife's relatives, out of his consideration for them, and

that his wife accompanied him in order that she might have the opportunity of visiting her mother and sister; but that she did not accompany him for the purpose of assisting in any way in the transportation of the servant, nor did she have any control whatever of the car. It seems to us that any other conclusion would amount to a *reductio ad absurdum.*"

It will be conceded that in the *Long case* it was stated by the Court that since the collision occurred in North Carolina the law of that State controlled and the decisions of North Carolina were reviewed at length. However, it is crystal clear therefrom that the same rule obtains in our State.

Another and later case that lends support to the views herein expressed is that of *Rock v. Atlantic Coast Line R. Co., 222 S. C. 362, 72 S. E. (2d) 900, 904.* In that case a father and son owned an automobile together. Plaintiff, mother of the son who owned an interest in the vehicle, was injured at a railroad crossing while traveling with him and other members of the family. She brought an action against the Railroad to recover for such injuries. We refused to apply the rule of joint enterprise as a matter of law and the following observations of the Court are both interesting and enlightening:

"The record shows that this shopping trip which the plaintiff and her children were headed for was a family affair, and there is no evidence from which we may declare as a matter of law that the plaintiff either assumed to the driver the relation of master or superior, or had the control or direction of the automobile. *The gross negligence, recklessness, etc., if any, of the driver, should not be imputed to the plaintiff, who, the evidence shows, was a guest or passenger.*" (Emphasis added.)

If the negligence of the driver of an automobile who is the son of the injured passenger, the mother, may not be imputed to the latter under the circumstances of the above cited

case, there would seem far less reason for applying the rule of imputed negligence in the cause here where the father was the driver and his minor daughter the passenger. Common sense and reason dictates that a mother should be expected to have and exercise more control over the movements and conduct of her son in the operation of his motor vehicle wherein she travels than a 13-year old girl would have over her father when he is driving his own car.

In reaching the conclusions above we have not overlooked the principle usually involved in this type of case, that, although the negligence of a driver may not be imputable to the passenger, the latter might still be barred of recovery for failure to exercise his senses of sight, hearing, and perception to protect himself. This is but another method of applying the rule of contributory negligence and we have already herein held the testimony insufficient to make an issue for the jury on that alleged defense.

Furthermore, like we said in considering the first question hereinabove, and we repeat that it was the affirmative duty of appellants to establish the alleged defense of joint enterprise and imputed negligence by offering testimony sufficient to make an issue for determination of the jury. They have utterly failed to carry this burden.

The Order of the Circuit Court is hereby affirmed.

STUKES, TAYLOR, OXNER and LEGGE, JJ., concur.