17600

Paul K. HINES d/b/a Hines Bros. Construction Company, Respondent,
v. Harry B. FARR, County Superintendent of Education for
Union County, S. C., ex-officio Chairman of Union
County Board of Education, and the Union
County Board of Education, Appellants

(111 S. E. (2d) 33)

Messrs. *L. H. Jennings, Jr.,* and *Long & Long,* of Union, for *Appellants,*

Messrs. *Mike S. Jolly, David N. Wilburn, Jr.,* and *Bruce W. White,* of Union, for *Respondent,*

438

January 5, 1960.

Moss, Justice.

This action was instituted by Paul K. Hines, doing business as Hines Bros. Construction Company, the respondent herein, against Harry B. Farr, Chairman and Superintendent of the Union County Board of Education, and the Union County Board of Education, the appellants herein, to recover the sum of $22,908.04, with interest thereon from February 24, 1955, at the rate of 6% per annum, being the sum alleged to be due by virtue of three separate contracts made by the respondent with the Board of Trustees of Union County School District No. 1, the predecessor in office to the appellants herein.

It appears from the record that in February, 1954, the respondent entered into three separate contracts with the Board of Trustees Union County School District No. 1, said contracts being designated as "Drainage" contract, "Sewerage" contract, and "Grading, Clearing and Grubbing" contract, for a contract price in the amount of $12,000.00, $9,-350.00, and $7,850.00, respectively. The work to be performed under these three contracts was in connection with the construction of a high school building and surrounding grounds at Lockhart, South Carolina, under plans and specifications prepared by Harold Woodward, architect. A

review of the contracts in question shows that the architect, who was employed by the appellants, was to have general supervision of the work to be done by the respondent. Each of the contracts provided for payment to the respondent of a specified amount for the regular contract job, with the provision for extra compensation in the event that rock was encountered in the excavation, to pay to the respondent the additional sum of $12.00 per cubic yard for the removal of same.

The contract between the parties provided, with reference to acceptance and final payment, as follows:

"Upon receipt of written notice that the work is ready for final inspection and acceptance, the Architect shall promptly make such inspection, and when he finds the work acceptable under the Contract and the Contract fully performed he shall promptly issue a final certificate, over his own signature, stating that the work provided for in this Contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the Contractor, and noted in said final certificate, is due and payable."

It was also provided in the contract that in the event that a dispute arose between the parties, that:

"It shall be the responsibility of the Architect to make written decisions in regard to all claims of the Owner or Contractor and to interpret the contract documents on all questions arising in connection with the execution of the work."

It appears from the allegations of the complaint that the respondent fully and completely performed the contracts on his part, and the answer of the appellants admits that the respondent "completed said contracts and submitted bills to defendants in or about the month of February, 1955." It appears from the evidence that the respondent did, on February 24, 1955, file with J. Paul Beam, the then director of the Union County Schools, an itemized statement of the

work done under the terms of the three contracts and the amount due him under and by virtue thereof. It was asserted by the claim so filed that there was due to the respondent a balance of $26,102.04. Included in the statement so filed was the claim for extra compensation by reason of rock excavation at the rate of $12.00 per cubic yard. The claim for the extra compensation for rock excavation was certified as being true by the respondent and the architect. It further appears that after the submission of the above statement, a partial payment in the amount of $3,194.00 was made, leaving a balance due under the contracts of $22,908.04. It appears from the record in this case that some dispute arose between the respondent and appellants as to whether or not the charges made by the respondent for rock excavation were correct. This is the basis of the controversy between the parties to this action.

It is conclusive from the claim filed by the respondent and certified by the architect, that the respondent had removed the number of cubic yards of rock stated in the claim. This was a decision of the architect as to the disputed yardage of rock excavation. The contract further provided that in the event there was a disagreement with the decision made by the architect, that such should be submitted to arbitration by the parties in accordance with the provisions of the current Standard Form of Arbitration Procedure of the American Institute of Architects, and that all findings of fact by the arbitrator should be conclusive and binding on both parties. It was further provided that demand for such arbitration, in connection with any dispute, should be filed with the architect and with the other party to the contract within thirty days after the dispute has arisen. The complaint alleges that the appellants, who disputed the decision of their own architect and agent, have not demanded arbitration, but that the respondent in an attempt to conclude this matter and to enforce payment by the appellants, did institute proceedings demanding arbitration of the dispute. It is further alleged that the appellants refused to submit the claim to arbitration.

This action was tried before the Honorable Steve C. Griffith, Presiding Judge, and a jury. At the conclusion of all the testimony, both the respondent and the appellants moved the Court for a directed verdict. The motion as made by the appellants was on the ground that the respondent did not demand arbitration in writing within thirty days after the dispute arose. The respondent moved for a directed verdict on the ground that the testimony conclusively showed that he had performed the contract on his part and that the certificate of the architect duly certified such fact, and since the appellant had not alleged bad faith, gross negligence or fraud on the part of the architect, such certificate was final and conclusive between the parties and could not be attacked by the appellants. The trial Judge directed a verdict for the respondent for the amount claimed in the complaint. The case is before this Court upon a number of exceptions challenging the ruling of the trial Judge.

One of the questions for determination is whether the respondent was barred from any recovery when he failed to demand arbitration within the period provided for in the contracts. The appellants assert that such demand for arbitration was a prerequisite to any Court action. In the case of *Jones v. Enoree Power Co.,* 92 S. C. 263, 75 S. E. 452, 454, this Court held, with reference to arbitration agreements, that:

"As to the validity of such contracts, the authorities with entire unanimity, now lay down this rule. An agreement to submit to arbitration all questions of law and fact that may arise under a contract is contrary to the public policy and void, as an attempt to oust the courts of their jurisdiction and establish in their place a contract tribunal. But an agreement that any particular issues of fact that may arise, such as quality of goods or amount of loss or damage, or the like, shall be submitted to arbitration, leaves the question of ultimate liability open for the decision of the courts and is valid; and if the contract expressly or by necessary implication makes the ascertainment of such fact by arbitrators

a condition precedent to a right of action, it is a good defense to a suit on the contract that the plaintiff has, without such good excuse, failed to arbitrate. Freedom to contract for arbitration to this extent imports no invasion of the province of the courts, and there is no ground upon which a right so essential to the convenient transaction of modern business affiairs can be denied." See also in this connection *Harwell v. Home Mutual Fire Ins. Co.,* 228 S. C. 594, 91 S. E. (2d) 273.

We do not think the foregoing rule is applicable here. It appears that in an action between the same parties, who are now before the Court in this case, that the respondent did, on March 22, 1957, based on a verified petition, have the Circuit Court of Union County, South Carolina, to issue a rule to show cause as to why the appellants herein should not be required to submit to arbitration the differences between the parties arising under the terms of the contracts here involved. The Circuit Judge held that the alleged right to arbitrate was factually in dispute and referred, after allowing the appellants here to asnwer, the issues to the Master of Union County for the purpose of taking the testimony and making a report of his findings of law and fact. Upon appeal to this court, this action of the Circuit Judge was affirmed. *Hines v. Farr,* 231 S. C. 513, 99 S. E. (2d) 48, 49. A hearing was held before the Master for Union County, who, after the taking of testimony, held that the respondent was not entitled to arbitration but must pursue his claim in the usual manner before a competent court of law. The findings and conclusions of the Master were confirmed by an order of the Honorable Bruce Littlejohn, Resident Judge of the Seventh Circuit. There was no appeal from this order. This holding of the Circuit Court is *res adjudicata* here because there was an identity of the parties and subject matter, together with an adjudication in the above action of the precise question sought to be raised in this case. Hence, the defense that the respondent was barred from any recovery when he failed to demand arbitration was not available to the appellants in this case.

In the case of *Pharr v. Canal Ins. Co.*, 233 S. C. 266, 104 S. E. (2d) 394, 398, we quoted, with approval, from *Johnston-Crews Co. v. Folk*, 118 S. C. 470, 111 S. E. 15, where the Court said:

"The following have been declared to be the essential elements of *res adjudicata:* (1) Identity of the parties; (2) identity of the subject-matter; (3) an adjudication in the former suit of the precise question sought to be raised in the second suit. *Hart v. Bates*, 17 S. C. 35."

The appellants charge the trial Judge with error in holding that J. Paul Beam, the then Director of the Union County Schools, had authority to accept the work done by the respondent. An examination of the record in this case does not show that the trial Judge made such a ruling nor was such question raised in the Court below. Hence, the question, raised here for the first time, is not properly before this Court for consideration and the exceptions posing this question are overruled. *Carter v. Peace*, 229 S. C. 346, 93 S. E. (2d) 113; *Simonds v. Simonds*, 229 S. C. 376, 93 S. E. (2d) 107.

The appellants assert that it was error for the trial Judge to hold that the architect was the agent of the Union County School Board. The evidence conclusively shows that Harold Woodward was employed by the predecessors in office of the appellants for the purpose of preparing plans and specifications in connection with the three contracts here involved. It was also his duty to supervise the work being done by the respondent and to require performance in accordance with the plans and specifications prepared by him. It has been held that an architect, in the permormance of his supervisory functions with respect to a building under construction, ordinarily acts as the agent and representative of the person for whom the work is being done. 3 Am. Jur., Architects, Section 5, page 1000; 19 A. L. R. 259, 1181. Cf. *Sullivan v. Byrne*, 10 S. C. 122. We think the trial Judge was correct in holding that the architect in this case was the agent of the appellants.

The appellants assert that the trial Judge committed error in directing a verdict for the respondent, and allege that it was error not to submit to the jury the issue of whether the respondent had removed any rock as provided for in the contract, and, if so, what amount. It is the position of the respondent that the appellants were bound by the determination made by the architect, its agent, in the absence of allegations and proof of fraud, incompetency or such gross mistake on his part as would necessarily imply bad faith or dishonesty.

The trial Judge held, in directing a verdict for the respondent, that the certificate of the architect was final and conclusive between the parties as to any matter connected with the contract, and that such certificate could not be impeached in the absence of allegations and proof of fraud, dishonesty or incompetency on the part of such architect. He also held that there was no evidence in this case upon which any reasonable man could conclude that the architect was incompetent or dishonest.

In the case of *United States v. Gleason,* 175 U. S. 588, 20 S. Ct. 228, 235, 44 L. Ed. 284, testimony was permitted to impeach the certificate of an engineer. This engineer had determined certain matters that were in dispute between the parties, and in reversing the decision of the lower Court, it was said:

"The fallacy, as we think, in the position of the court below, was in assuming that it was competent to go back of the judgment of the engineer, and to revise his action by the views of the court. This, we have seen, could only be done upon allegation and proof of bad faith, or of mistake or negligence so great, so gross, as to justify an inference of bad faith. But in this case we find neither allegation nor proof. * * *"

We should point out that we have carefully examined the pleadings filed in behalf of the appellants and there are no allegations therein charging the architect with frand, dis-

honesty or incompetency. We, likewise, find from a reading of the entire record that there was no evidence of the incompetency or dishonesty of the architect.

We point out again that the parties to the contracts here involved agreed that when the completed work was ready for final inspection and acceptance, it was the duty of the architect to make such inspection, and when he found the work acceptable under the contract, and that the contract had been fully performed, that he should issue his final certificate stating that the work provided for in the contract had been completed and was accepted by him, and the entire balance found to be due the contractor, and noted in said certificate, is due and payable. It was provided that it was the responsibility of the architect to make written decisions in regard to all claims of the owner or contractor. We think that these provisions intended to, and did make the decision of the architect final and conclusive.

It has been held that where the contract provides that the work shall be done to the satisfaction, approval or acceptance of an architect or engineer, such architect or engineer is thereby constituted sole arbiter between the parties, are bound by his decision, in the absence of fraud or mistake. 54 A. L. R., at page 1260, and 110 A. L. R., at page 139.

In the case of *Greenville-Carolina Power Co. v. United States Fidelity & Guaranty Co.*, 83 S. C. 90, 64 S. E. 518, 521, this Court adopted as its decision a circuit decree which held that where a contract provided for payments upon the estimates and certificates of the engineers, that:

" 'Such a stipulation is valid, and the decision of the engineers, in the absence of fraud or collusion, or mistake so gross as to imply bad faith, or the failure to exercise an honest judgment, binding upon the parties to the contract. *Sullivan v. Byrne*, 10 S. C. 122; *Kihlberg v. United States*, 97 U. S. 398, 24 L. Ed. 1106; *Boettler v. Tendick*, 73 Tex. 488, 11 S. W. 497, 5 L. R. A. 270; *St. Paul & N. P. Ry. [Co.] v. Bradbury*, 42 Minn. 222, 44 N. W. [1], 2; *Elliott*

*v. Missouri, etc., R. R. Co.* [8 Cir.], 74 F. 707, 21 C. C. A. [3], 5; *Choctaw, etc., Co. v. Newton* [8 Cir.], 140 F. 225, 71 C. C. A. 655.' "

Likewise, in the case of *Jones v. Enoree Power Co.,* 92 S. C. 263, 75 S. E. 452, 455, it was said:

"* * * For example, in building contracts it is manifest that there must be some one other than a court or jury to pass on the question as to whether there has been a compliance with the specifications as the building proceeds, or to determine whether the work shall be accepted or rejected as completed. Hence there may be a lawful and irrevocable stipulation for the certificate of the architect or engineer. * * *"

In 9 Am. Jur., Building and Construction Contracts, section 36, at page 26, the rule is stated as follows:

"* * * It may be stated generally that any stipulation whereby the parties constitute an architect or engineer the final arbiter between themselves, as to any matter connected with the contract, makes the decision of the architect or engineer conclusive as to such matter. For example, where the contract provides that the work shall be done to the satisfaction, approval, or acceptance of an architect or engineer, such architect or engineer is thereby constituted sole arbitrator between the parties, and the parties are bound by his decision. The same rule seems to apply where it is provided that payments shall be made only upon the certificate of the architect. * * *"

In the case of *Penn Bridge Co. v. Kershaw County,* 4 Cir., 226 F. 728, it was held that where a bridge contract provided that the engineers in charge should decide the true construction of the specifications, and the quantity of materials and workmanship, their decision was final when made in good faith.

We conclude that the certificate of the architect is binding upon the parties to this action because he acted within the authority conferred by the contracts. We think the trial Judge was correct in directing a verdict for the respondent.

It appears from the record that this case was tried before the Honorable Steve C. Griffith, the Presiding Judge of the Seventh Circuit, on December 1 and 2, 1958. Judge Griffith was at such time the duly assigned Presiding Judge of the Seventh Circuit. Some time thereafter The Citizens and Southern National Bank of South Carolina served notice upon the appellants that the claim of the respondent against them had been assigned to said bank. The appellants thereupon, on March 7, 1959, moved before the Honorable Steve C. Griffith, the Resident Judge of the Eighth Circuit, and who was the trial Judge in the instant case, when he was duly assigned to the Seventh Circuit, for an order including in this case a statement to the effect that the respondent had executed an assignment of his claim or right under his contracts with the appellants to The Citizens and Southern National Bank of South Carolina. The respondent resisted the motion upon the ground that the assignment was not before the Court during the trial of this action. Judge Griffith held that he was without authority or jurisdiction to include in the case any matter that was not before the trial Court at the time of the trial of this case. The appellants allege that this was error.

We think the trial Judge was correct in holding that he had no jurisdiction to grant the order requested, because he completed his assignment in the Seventh Circuit in December, 1958, and thereupon left the Circuit. He was without authority and jurisdiction to grant the order requested by the appellants. Cf. *Barnett v. Piedmont Shirt Corp.,* 230 S. C. 34, 94 S. E. (2d) 1, and the cases therein cited.

The parties to this action could not agree upon what would constitute the record for appeal in this case, and upon proper motion made, the Court allowed the "statement" as proposed by the respondent. The appellants except to such order. The exceptions of the appellants to the order settling the case were not argued in the brief of the appellants and are considered abandoned by this Court. *Field v. Gregory,* 230 S. C. 39, 94 S. E. (2d) 15.

All of the exceptions of the appellants are overruled and the judgment of the Court below is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.