**BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, Plaintiff,**

v.

**W.R. GRACE & COMPANY, Defendant.**

**Civ. A. No. 6:89–1287–17.**

United States District Court,
D. South Carolina,
Greenville Division.

Aug. 19, 1991.

**422**

Daniel A. Speights, C. Alan Runyan, Rodney F. Pillsbury, Speights & Runyan, Hampton, S.C., for plaintiff.

L. Gray Geddie, Jr., Michael S. Thwaites, William H. Floyd, III, William S. Rutchow, Ogletree, Deakins, Nash, Smoak and Stewart, Greenville, S.C., Louis C. Woolf, Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, Tenn., for defendant.

## ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

Blue Cross and Blue Shield of South Carolina ("Blue Cross") brought this action against Defendant, W.R. Grace & Co. ("Grace"), to recover costs associated with the presence and removal of Grace's asbestos-containing fireproofing product, Monokote. After a three week trial, the jury awarded Blue Cross $3,827,675.00 in damages.

This matter now comes before the Court on Grace's motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. Grace has moved for a judgment notwithstanding the verdict on the ground that Plaintiff's claims are barred by the statute of limitations as a matter of law. Alternatively, Grace seeks a new trial on three separate grounds: (1) the Court erred in its charge that the architect is not the agent of Blue Cross; (2) the Court erred in granting Plaintiff's motion for a

directed verdict as to the affirmative defenses of contributory negligence and assumption of the risk; and (3) the Court erred in limiting Grace's cross-examination of Plaintiff's rebuttal witness, Michael Thompson. After reviewing the submitted briefs and having heard oral argument, the Court denies Grace's motion for the reasons set forth below.

## PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS AS A MATTER OF LAW

Under federal law,[1] in determining a motion for a judgement notwithstanding the verdict, the evidence and all reasonable inferences from it are assessed in light most favorable to the non-moving party. *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 243 n. 14 (4th Cir.1982). The credibility of all evidence favoring the non-moving party is assumed. *Tights, Inc. v. Acme–McCrary Corp.*, 541 F.2d 1047, 1055 (4th Cir.1976). Viewing the evidence this way, "the evidence must then be 'of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the non-moving party.'" *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 160 (4th Cir.1988), *quoting, Wyatt v. Interstate & Ocean Trans. Co.*, 623 F.2d 888, 891 (4th Cir.1980). Under this standard, viewing the evidence and all reasonable inferences in light most favorable to Blue Cross, the Court finds a reasonable jury could find that its claims were not barred by the statute of limitations. As such, the statute of limitations defense was properly submitted to and determined by the jury.

Grace argues that Plaintiff's suit is barred as a matter of law by the statute of limitations based upon the cumulative knowledge of various Blue Cross employees. Grace principally relies upon the testimony of three witnesses. Joe Sullivan, Chairman of the Board of Directors of Blue Cross, testified that when he came to work

---

**1.** In a diversity case, the standard for assessing the sufficiency of the evidence to establish a submissible case under state substantive law is governed by federal law. *Owens ex rel. Owens v. Bourns, Inc.*, 766 F.2d 145, 149 (4th Cir.1985).

for Blue Cross in 1971, he was aware that asbestos had been banned in several cities in New England. At the time Mr. Sullivan began work at Blue Cross, the fireproofing had already been installed and the tower's construction was substantially complete. However, Mr. Sullivan also testified that he did not know the fireproofing in the Blue Cross tower contained asbestos until January, 1989.

Grace also points to a letter George Wilson, Vice President of Administrative Services at Blue Cross, received during the time of construction. Mr. Wilson underlined a sentence that referenced sprayed asbestos fireproofing. At trial, Mr. Wilson testified that he did not know asbestos was hazardous at that time. Mr. Wilson further stated that he did not learn the Monokote fireproofing contained asbestos until he had it tested in January, 1989.

Finally, Grace references the testimony of Willie Mullins. Mr. Mullins has worked on the custodial staff at Blue Cross since May 2, 1983. Mr. Mullins testified that, during a walk-through of the building shortly after he began work, someone told him the fireproofing contained asbestos. However, Mr. Mullins also stated that he did not know that asbestos might be harmful to his health until much later. This is evidenced by the fact that for years Mr. Mullins worked in the dusty conditions around the fireproofing without respiratory protection. It was undisputed at trial that the work practices above the ceiling and around the fireproofing were dramatically altered under the operations and maintenance program implemented in 1989, after Blue Cross discovered the fireproofing contained asbestos.

There was ample evidence from which a jury could reasonably find that Blue Cross did not know it had a cause of action against Grace until January, 1989. That is

the period that several Blue Cross employees (e.g. Joe Sullivan, Robert Leichtle and George Wilson) testified the issue of asbestos in the Monokote first came to their attention. It cannot be said as a matter of law that Blue Cross knew it had a cause of action against Grace prior to May 19, 1983. The issue was properly presented to the jury,[2] and this Court will not overturn the jury's findings that Plaintiff's claims are not barred.

## THE COURT PROPERLY INSTRUCTED THE JURY THAT THE ARCHITECT IS NOT THE AGENT OF THE PLAINTIFF

The Court charged the jury that the architect is not the agent of the plaintiff for statute of limitations purposes. This issue was thoroughly argued in the numerous jury charge conferences the Court had with counsel for both sides. Grace presents no new arguments why this Court should change its previous ruling. Based on the law and the evidence, the Court adheres to its charge.

■ The crux of Grace's argument is that the architect is the agent of the owner. As an agent, any knowledge available to the architect about the hazards of asbestos would be imputed to the owner, Blue Cross. This argument fails legally and factually. An architect may be both an independent contractor and an agent, depending upon the function the architect is performing. *See, State ex rel. McLeod v. C & L Corp., Inc.,* 280 S.C. 519, 313 S.E.2d 334, 338 (Ct.App.1984).

The architect is an independent contractor of the building owner for matters concerning the preparation of plans and specifications. 5 Am.Jur.2d, *Architects,* § 6 (1962), and Acret, *Architects and Engineers: Their Professional Responsibilities,* § 8.3 (1977).[3] Because a building own-

2. Grace did not even argue the statute of limitations during closing argument.

3. *Accord, Bagwell Coatings, Inc., v. Middle South Energy, Inc.,* 797 F.2d 1298 (5th Cir.1986); *Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 719 F.2d 1335 (7th Cir.1983); *Canton Lutheran Church v. Sovik, Mathre, Sathrum & Quanbeck,* 507 F.Supp. 873 (D.S.D.1981); *E.C.*

*Ernst, Inc., v. Manhattan Constr. Co. of Texas,* 387 F.Supp. 1001 (S.D.Ala.1974); *aff'd in part, vac'd in part,* 551 F.2d 1026 (5th Cir.1977), *modified,* 559 F.2d 268 (5th Cir.1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978); *Berkel and Company Contractors, Inc. v. Providence Hospital,* 454 So.2d 496 (Ala.1984); *Barnes v. Lozoff,* 20 Wis.2d 644, 123 N.W.2d 543

er's control over an architect extends only to the final product of the specifications, and not to the *means* by which they are produced, the architect is an independent contractor. *Young v. Warr,* 252 S.C. 179, 165 S.E.2d 797, 802 (1969). *See also, Gantt v. Van der Hoek,* 251 S.C. 307 162 S.E.2d 267 (1968) (builder furnishing all labor, materials and supervision and constructing residence according to plans is an independent contractor, not an agent, of owners). It is not contested that the architect makes his selection of fireproofing products as part of the preparation of the plans and specifications.

■ An architect is an agent of the owner only for those matters regarding the architect's supervision over the construction of the building. 5 Am.Jur.2d, *Architects,* § 6 (1962). *Accord, Hines v. Farr,* 235 S.C. 436, 112 S.E.2d 33 (1960) ("an architect, in the performance of his supervisory functions with respect to a building under construction, ordinarily acts as the agent and representative of [the owner].") The cases cited by Grace for the proposition that the architect is an agent of the building owner specifically reference the agency relationship to the architect's duties in supervising construction.[4]

■ Grace asserts that the architect *could* have issued a change order regarding his selection of products during the supervision of the construction phase. Grace emphasizes that the contract be-

tween Blue Cross and the architect provides that the architect shall be the agent of the owner during construction. Thus, by Grace's argument, the knowledge held by the architect regarding the development of the plans and specifications becomes imputable once construction begins.

This argument undermines the legal distinction the law provides for the different roles of an architect. The Court sees no justification for imputing the architect's knowledge about the selection of building materials to an owner simply because construction begins on the building as specified and designed.

■ Even if the charge was in error, under the facts of this case, such error would not warrant a new trial. There was no evidence in this case that the architect for this building knew anything of the hazards of asbestos or that Monokote contained asbestos. In its brief, Plaintiff points out that Grace deposed the architect in this case. Yet Grace presented none of this testimony to the Court or jury.

Grace contends that the hazards of asbestos were widely known during the time the Blue Cross tower was constructed. This assertion is severely undercut by the fact that Grace did not, at any time, place warnings on the bags of Monokote. There was no evidence that at any time prior to the installation of Monokote in the Blue Cross tower did Grace place any warnings in its advertising brochures or in *Sweet's*

(1963); *Montgomery v. Levy,* 406 Pa. 547, 177 A.2d 448 (1962); *Mackay v. Benjamin Franklin Realty & Holding Co.,* 288 Pa. 207, 135 A. 613 (1927); *Looker v. Gulf Coast Fair,* 203 Ala. 42, 81 So. 832 (1919); *Burke v. Ireland,* 166 N.Y. 305, 59 N.E. 914 (1901); *Boswell v. Laird,* 8 Cal. 469 (1857); *Milton J. Womack v. House of Representatives of the State,* 509 So.2d 62 (La.App.1987); *Huber, Hunt & Nichols, Inc., v. Richard R. Moore,* 67 Cal.App.3d, 278, 136 Cal.Rptr. 603 (1977); *Bulley & Andrews, Inc., v. Symons Corp.,* 25 Ill.App.3d 696, 323 N.E.2d 806 (1975); *Cutlip v. Lucky Stores, Inc.,* 22 Md.App. 673, 325 A.2d 432 (Md.Ct.Spec.App.1974); *Trane Co. v. Arthur Gilbert,* 267 Cal.App.2d 720, 73 Cal.Rptr. 279 (1968); *Lapuk v. Charles L. Blount,* 2 Conn.Cir. 271, 198 A.2d 233 (Conn.Cir.Ct.1963), *cert. denied,* 198 A.2d 233 (1964); *Valiquette v. Fraser,* 39 S.C.Can. 1 (1907).

4. *See, Hines v. Farr,* 235 S.C. 436, 112 S.E.2d 33, 37 (1960) (*supra*); *Greensboro Housing Authority v. Kirkpatrick & Assoc., Inc.,* 56 N.C.App. 400, 289 S.E.2d 115, 117 (1982) (agent as to "performance of his supervisory functions with respect to a building under construction"); *Palmer v. Brown,* 127 Cal.App.2d 44, 273 P.2d 306, 315–16 (1954) (architect improperly received compensation from contractor while supervising contractor's work for owner); *Fuchs v. Parsons Construction Co.,* 172 Neb. 719, 111 N.W.2d 727, 733 (1961).

*Lunlow v. Fairchance Lumber Co.,* 389 F.2d 212 (10th Cir.1968), *cert. denied,* 392 U.S. 908, 88 S.Ct. 2062, 20 L.Ed.2d 1366 (1968) does not specifically identify any facts that reveal the scope of the relationship. 389 F.2d at 215.

catalogs for architects.[5] Documents presented by the plaintiff during the cross-examination of Grace's witness, Thomas Egan, indicate that Grace made an affirmative decision not to call the asbestos hazard to the attention of architects. Furthermore, Plaintiff called Grace's salesman who testified by deposition that he did not know Monokote contained asbestos.

In summary, as a matter of law the knowledge of an architect regarding the selection of building materials cannot be imputed to the owner. Even if charging the jury that the architect's knowledge cannot be imputed to the plaintiff for purposes of statute of limitations was erroneous, such error was harmless in view of the fact that there was no evidence that the architect for this building knew that asbestos was hazardous or that Monokote contained asbestos at the time Monokote was installed in the Blue Cross tower.

## THE COURT PROPERLY DIRECTED A VERDICT AGAINST DEFENDANT'S AFFIRMATIVE DEFENSES OF CONTRIBUTORY NEGLIGENCE AND ASSUMPTION OF THE RISK

A directed verdict is proper where the facts and circumstances so strongly point in favor of one party that a reasonable jury could not arrive at a contrary verdict. *Johns v. Jarrad*, 927 F.2d 551 (11th Cir.1991), *reh. denied*, 935 F.2d 1297 (11th Cir.1991). Under South Carolina law, contributory negligence occurs where an act or omission of the plaintiff, amounting to want of ordinary care, concurring with the negligent acts of defendant, is the proximate cause of injury. *Sandifer v. Sale*, 196 F.Supp. 721 (E.D.S.C.1961); *accord*, *Wallace v. Owens–Illinois, Inc.*, 300 S.C.

518, 389 S.E.2d 155, 157 (Ct.App.1989).[6] Juries cannot be permitted to speculate on issues of negligence or contributory negligence in a void of evidence and will not be permitted to find contributory negligence where there are no circumstances which could reasonably serve as a basis of jury determination of contributory negligence. *Mann v. Bowman Transportation, Inc.*, 300 F.2d 505 (4th Cir.1962). Ordinarily, contributory negligence is a mixed question of law or fact for the jury to determine, but it becomes a matter of law for determination by the Court when evidence admits of but one reasonable inference, whether from all testimony considered together, or from lack of any evidence on such question. *Bolt v. Gibson*, 225 S.C. 538, 83 S.E.2d 191 (1954).

Grace's contributory negligence defense is premised upon two grounds. First, Blue Cross is contributorily negligent by purchasing Grace's product when Blue Cross knew, or should have known, that asbestos was harmful, and when Blue Cross knew, or should have known, that Grace's product contained asbestos. Second, Blue Cross was contributorily negligent in the handling of the product "by permitting its employees to come into contact with the material sprayed onto exposed columns." Grace did not present sufficient evidence on either theory to make the issue submissible to the jury.

As for contributory negligence based solely upon the fact that Plaintiff purchased Grace's product, the Court finds Grace's argument unpersuasive for two reasons. First, even though Grace characterizes Plaintiff's alleged knowledge at the time of sale as contributory negligence,

---

**5.** After strenuous debate about the admissibility of a 1971 *Sweet's* advertisement which made vague references to the asbestos issue, the Court ruled the document to be admissible. However, Grace never offered the document into evidence.

**6.** The requisite knowledge for assumption of the risk is more substantial. In *Wallace v. Owens–Illinois, Inc.*, 389 S.E.2d at 158, the Court held that a plaintiff must deliberately and voluntarily assume a known risk. "The doctrine of assumption of risk embodies the principle that one

should not be permitted knowingly and voluntarily to incur an *obvious* harm, when he has the ability to avoid doing so, and then hold another person responsible for his injury." *Id.* (emphasis added). There was no evidence that the harm associated with Grace's product was obvious to Blue Cross, much less that Blue Cross deliberately chose to proceed to purchase and use Grace's product in view of the harm. Plaintiff did not assume the risk as a matter of law.

this is a statute of limitations issue. The same knowledge required to support the defense of contributory negligence (i.e. knowledge of the asbestos hazard and of the product's content) is subsumed by the statute of limitations.

Under Grace's theory, Blue Cross had, or should have had, requisite knowledge at the time of sale not to purchase its product. In comparison, the statute of limitations defense encompasses the same underlying knowledge of the plaintiff, not only from the date of sale (where Grace's contributory negligence defense would cease), but up until May 19, 1983, six years prior to the filing of this lawsuit. Therefore, if Blue Cross was contributorily negligent in this manner, its claim would be barred by the statute of limitations. Conversely, if Plaintiff's claim was not barred by the statute of limitations, it was without sufficient knowledge at the time of sale to be contributorily negligent in the manner asserted by Grace. The Court submitted the statute of limitations defense to the jury, and the jury found for Blue Cross on this issue.

Second, to prevail on this defense, Grace had the burden to demonstrate that Plaintiff knew (or should have known) asbestos was hazardous, and Plaintiff knew (or should have known) that Grace's product contained asbestos. Grace asserts that there was circumstantial evidence regarding the awareness of the health effects of asbestos existed. However, there was simply no evidence that Blue Cross knew, or should have known, that *Grace's* product contained asbestos. As previously discussed, Grace did not place any warnings in its advertising brochures or on its bags of Monokote. Grace's own salesman testified that he did not know the product contained asbestos.

Additionally, no Blue Cross employee testified that, at the time of sale, he knew asbestos was hazardous and that Monokote contained asbestos. George Wilson testified that at the time of installation of the fireproofing, he did not know that Monokote contained asbestos, nor did he know asbestos was hazardous. Joe Sullivan did not know that the Monokote installed in the Blue Cross tower contained asbestos. He testified that he was "surprised" to discover asbestos in 1989, because he thought its use had been discontinued in construction products at the time the Blue Cross tower was constructed.

Without any direct or circumstantial evidence to support this crucial element, there was no evidence upon which a reasonable jury could find that Blue Cross was contributorily negligent solely by purchasing Grace's product.

■ The second ground submitted by Grace is that Blue Cross was contributorily negligent by permitting its employees to bump into, rub against, or otherwise disturb the fireproofing. This argument fails for two reasons. First, there was no evidence for a jury to find that Blue Cross knew, or should have known, that these activities were causing its damage. The only evidence offered relevant to this issue is the testimony of Willie Mullins, a custodial worker for Blue Cross. Mr. Mullins testified that someone told him there was asbestos in the fireproofing, shortly after he began working at Blue Cross in 1983. However, Mr. Mullins also testified that he did not know asbestos might be hazardous until much later. Grace presented no evidence that any employee of the plaintiff acted carelessly around the material once it was learned that asbestos is hazardous, and it was discovered that the fireproofing contains asbestos.

In fact, all of the evidence is directly to the contrary. As soon as Blue Cross learned the fireproofing contained asbestos in January, 1989, it immediately prohibited any activity that would disturb the material. George Wilson testified that Blue Cross prohibited employees in the tower from removing or disturbing ceiling tiles. Access to areas with exposed columns was restricted. Blue Cross hired William Ewing, a certified industrial hygienist, to design an operations and maintenance program. As Mr. Ewing testified at trial, this program sought to eliminate contact with the fireproofing, thereby minimizing the potential asbestos exposure to employees.

Second, the Court finds that the conduct complained of by Grace was not the proximate cause of Plaintiff's injury. Plaintiff's damages were based upon the costs associated with removing and replacing Grace's asbestos-containing product. Grace presented no proof as to how these routine maintenance activities [7] contributed to Blue Cross' injury or its removal damages.

Accordingly, there was no evidence upon which a reasonable jury could find that, beyond the normal foreseeable uses of this product, Blue Cross' actions contributed to its own injury. Plaintiff's motion for a directed verdict on this issue was appropriate.

## THE COURT PROPERLY LIMITED THE CROSS–EXAMINATION OF PLAINTIFF'S REBUTTAL WITNESS

As a final ground for a new trial, Grace argues that the Court erred in limiting its cross-examination of Plaintiff's rebuttal witness, Michael Thompson. During the course of the trial, counsel for Grace made repeated references to the presence of asbestos in the outside air in Greenville. In rebuttal, Plaintiff called Michael Thompson, who had taken air samples around the city of Greenville. The results showed no asbestos.

In its cross-examination, Grace attempted to introduce unpublished air samples taken in Columbia, South Carolina by another environmental law firm. These test results are inadmissible hearsay. Grace argues that Rule 703 of the Federal Rules of Evidence permits an expert to rely upon hearsay. However, the rule does not automatically provide for the admissibility of hearsay evidence simply because an expert is testifying. *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 576 F.Supp. 107, 158 (D.Del.1983) ("While an expert witness may base his opinion on [hearsay] evidence, this does not magically render the hearsay evidence admissible."), *aff'd*, 740 F.2d 956 (3d Cir.1984). The expert must rely upon the evidence in question for it to be admissible. *See e.g., Gregory v. South Hills Movers, Inc.*, 477 F.Supp. 484 (W.D.Penn.1979). Mr. Thompson did not rely upon the tests offered by Grace as a basis for his testimony. Therefore, the sample results were properly excluded.[8]

Furthermore, this ruling did not prejudice Grace. Grace could have offered this evidence during its case through one of its own witnesses.[9] At the very least, Grace was free to have its own experts take air samples in the Columbia area anytime during the two year discovery period. Grace chose to do neither. Grace cannot complain that it was prejudiced because it was not allowed to get the evidence in through one of Plaintiff's witnesses during rebuttal.

## CONCLUSION

For all of the foregoing reasons, Grace's motion for judgment notwithstanding the verdict, and, alternatively, for a new trial, is DENIED.

IT IS SO ORDERED.

---

**7.** There was no evidence that Blue Cross' activities were beyond the ordinary, foreseeable conditions under which this product is expected to perform. *See, Gardner v. Q.H.S., Inc.*, 448 F.2d 238 (4th Cir.1971) (a manufacturer is liable for all foreseeable uses of its product).

**8.** Similarly, the Court prohibited Plaintiff from cross-examining Defendant's experts on unpublished data unfamiliar to them. The Court did not permit Plaintiff to cross-examine Dr. Ronald Crystal about the Collegium Ramazzini, on the basis that he was not familiar with the details of this international conference.

**9.** Grace had listed these sample results on its exhibit list, which was submitted to the Court prior to the commencement of trial.